LOUISE EDWARDS, Plaintiff, *v.* THE NATIONAL CITY BANK OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Brooklyn, First District, January 12, 1934.

*Jules L. Druss*, for the plaintiff.

*Wingate & Cullen* [*J. Courtney McGroarty* of counsel], for the defendant.

SWEEDLER, J. The plaintiff, a depositor in the defendant bank, drew and delivered to the payee a check on her account in the sum of $150. Before the check was presented for payment she called at the bank and signed a stop-payment order, which reads: " I hereby agree to indemnify the National City Bank of New York against any loss resulting from non-payment of said check. Should you pay this check *through inadvertency*, or oversight, it is expressly understood that you will in no way be held responsible." Thereafter, when the check was presented by the holder, it was certified and later paid to a subsequent holder to whom it had been negotiated.

This action is brought to recover from the defendant bank the amount paid by it and charged against the plaintiff. The answer sets up as a defense the agreement entered into by the stop-payment order. In support of this defense it is alleged, in the affidavits in opposition to this motion, that the certification was made inadvertently and by mistake, and that when the check was presented by a subsequent holder, it was paid by the bank because of its contract of certification.

It is the defendant's contention that, after the check was certified, it became irrevocably obligated to pay it to a subsequent holder, and that since said certification was made inadvertently, the agreement contained in the stop-payment order relieves the defendant from liability. This contention must be upheld. Before its payment or certification the drawer may undoubtedly countermand the order, and payment thereafter is wrongful. Since a check of itself is not an assignment of the drawer's funds (Neg. Inst. Law, § 325), the bank is liable for paying it in disregard of the countermand. (*American Defense Society* v. *Sherman National Bank*, 225 N. Y. 506; Morse Banks & Banking [6th ed.], § 398.) This common-law liability, however, may be limited by agreement. When a depositor, seeking to exercise his right to stop payment, enters into a stipulation releasing the bank from liability for paying as a result of inadvertence or oversight, it constitutes a valid and binding

contract. (*Gaita* v. *Windsor Bank*, 251 N. Y. 152.) In this case, the court, in upholding the validity of a similar agreement, states (at p. 154): " The common-law liability of a bank in regard to a specific transaction may be limited provided the limitation has the assent of the depositor. In such a situation the clearly expressed intention of the parties will prevail and the rule of ' freedom of contract ' will be enforced. * * * The plaintiff, in effect, notified the bank that he had given a check which was valid, but that he had changed his mind and did not want the check paid. He said, however, in effect, ' If you (the bank) do pay it through inadvertence, I will not hold you responsible.' He had a legal right to serve such a notice qualifying the bank's common-law liability, and when the bank paid the check, after receipt of such notice, it did not become legally liable to the drawer in the absence of evidence of *willful* disregard of the notice. If a drawer desires to hold a bank to its common-law liability and impose upon it the absolute duty of stopping payment of a check, the notice served on the bank should be positive and unqualified. * * * On the other hand, if the drawer serves a qualified or limited notice like the one in question, the obligation of the bank is thereby limited, and it will not be liable to the drawer if the check is inadvertently paid."

Applying the above to the case at bar, a triable issue is presented as to whether or not the check was certified through inadvertence or willfully. Plaintiff urges, however, that even if it be conceded that the check was *certified* by mistake, nevertheless, it was *paid* willfully. This contention is invalid for the reason that under the circumstances the certification was to all intents and purposes the equivalent of payment. One of the important facts is that the check was ultimately paid, not to the payee, but to a subsequent indorsee to whom it had been negotiated after certification thereof by the payee. When that subsequent holder presented the check for payment the bank could not revoke its certification. (*Keleher* v. *Manufacturers Trust Co.*, 145 Misc. 589; Daniel Neg. Inst. § 1608; *Baldinger & Kupferman Mfg. Co.* v. *Manufacturers-Citizens Trust Co.*, 93 Misc. 94.) As was stated by Judge CARDOZO, writing for the court in the case of *Carnegie Trust Co.* v. *First National Bank* (213 N. Y. 301, at pp. 306, 307): " We find no authority for the proposition that a bank may resist the enforcement of its contract of certification in order to make a set-off available to its depositor. * * * Any other conclusion would be destructive of the value and efficiency of certified checks. *By common use such checks are treated for most purposes as the equivalent of cash.*" And in *Keleher* v. *Manufacturers Trust Co.* (*supra*) the

 

court held that " the effect of the certification was to charge the plaintiff [depositor] with the amount of the checks, pass that amount to the credit of the checks, and make the bank, as acceptor, primarily liable for the payment to any *bona fide* holder thereof * * * *the legal result is the same as if the holder had received the cash over the counter.*"

In view of the foregoing, motion for summary judgment denied.