## TIRADO v. CHASE NAT. BANK OF CITY OF NEW YORK.

### No. 3792.

Circuit Court of Appeals, First Circuit.

April 4, 1944.

Luis Tirado Geigel and Henri Brown, of San Juan, Puerto Rico, for appellant.

Orlando J. Antonsanti, Sifre, Franceschi & Sifre, and Adolfo Valdes, all of San Juan, Puerto Rico, for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This action was commenced by the appellant, Luis Tirado Geigel, in the Municipal Court of San Juan, Puerto Rico, and was removed on motion of the appellee, Chase National Bank of the City of New York, to the United States District Court for Puerto Rico pursuant to the provisions of 12 U.S.C.A. § 632, 48 Stat. 184.

After refusal by the bank to accept tender of $271.59 as payment of the balance due on a note for $1000, signed by appellant and his wife jointly, the appellant deposited that amount in the court and sought a decree canceling the note. The bank alleged that the balance due on the date of tender was $505.88 plus interest, and filed a counterclaim for that sum. The trial court found for the bank on its counterclaim.

The controversy centers around a check for $249.84 issued by Lahoud Freres, Inc., on June 1, 1938, on the Chase National Bank, payable to the order of the appellant. At the time the check was issued and presented to the bank and for some time prior and subsequent thereto, the checking account of Lahoud Freres, Inc., was overdrawn. The corporation operated on an agreement with the bank by which the bank would pay its overdrafts and receive a promissory note thereafter. The principal stockholder of Lahoud Freres, Inc., Antonio Diaz Gonzalez, had deposited securities with the bank to guarantee it against loss, and only such overdrafts

were honored as had the approval of the manager of the San Juan branch of the bank, Charles J. Schaer. Schaer's approval or disapproval would turn on the purpose for which the check was drawn and what he thought would be the attitude of Diaz Gonzalez to it. It was the practice for appellant's wife, Mrs. Tirado, whose function it was as assistant treasurer to sign the corporation's checks, to communicate with Schaer and get his approval before issuing each check.

Appellant's contention was that Schaer agreed to honor the check before its issue and afterwards agreed to apply it in reduction of the $1000 note. The crux of his appeal is the contention that the trial court's finding that the bank notified appellant's wife that the check had been disapproved for payment was not supported by the evidence and that the court should have found and ruled that the bank's "retention of the check and its failure to give timely notice of dishonor operated as a constructive acceptance of the same". There was a conflict in the evidence at each vital point.

On June 1, 1938, appellant's wife, Mrs. Tirado, signed and issued the check in question. Her statement that she had called Schaer on the telephone and that he had approved the issue and purpose of the check was denied by him. His testimony was that he had no knowledge of the check before its presentation to the bank. On June 3, 1938, Mrs. Tirado deposited the check endorsed by her husband with the appellee bank in the savings account of her minor son. On the day after the check was deposited, it was charged to the personal account of Mrs. Tirado. In the bank's record was a memorandum dated June 4, explaining the charge to the account of Mrs. Tirado: "as per phone conversation". There was testimony for the bank that the assistant manager had telephoned Mrs. Tirado to inform her that the check would not be honored and that she had then in-structed him to permit the deposit to her child's savings account to stand and to charge the check to her own private account. No objection was ever made to this charge to Mrs. Tirado's account.

Schaer testified that the first he knew of the check was when he saw it in the bank and that its purpose, to which he objected, was written on it. It was drawn to compensate the appellant in part for certain alleged expenses he had incurred on a trip to New York on behalf of the corporation six months before. At the time of the trip Mr. Tirado had received certain expense money and Schaer explained his refusal to honor the check as an overdraft "because it was a very delayed submission of a claim and it was simpler for her to write to Antonio Diaz Gonzalez and ask for the money and he could have made arrangements with the bank to pay the check". He also testified: "The check was the object of numerous discussions. As a matter of fact as a matter of courtesy we asked them (Mr. and Mrs. Tirado) to leave the matter in abeyance with no commitment of any kind on the part of the bank to pay it at any time, because if the bank had made a commitment it would have paid it right away and it would have been settled. The check was discussed on several occasions so that both the payee of the check as well as the endorser of the check knew exactly it had not been paid." On or about October 1, 1938, while Mr. and Mrs. Tirado were in Venezuela conferring with Antonio Diaz Gonzalez, Schaer wrote to Mrs. Tirado requesting her to take up the matter of the payment of the check with Diaz Gonzalez.

Giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses, we cannot say that its findings of fact were clearly erroneous. Rule 52, F.R.C.P., 28 U.S.C.A. following section 723c.

The judgment of the District Court is affirmed with costs to the appellee.