**MARTINEZ v. NATIONAL CITY BANK OF NEW YORK, SAN JUAN BRANCH.**

Civ. No. 5016.

United States District Court
D. Puerto Rico.  San Juan Division.
Nov. 9, 1948.

Cesar Andreu Ribas, of San Juan, Puerto Rica, for plaintiff.

H. S. McConnell, of San Juan, Puerto Rico, for defendant.

CHAVEZ, District Judge.

### Findings of Fact.

1. The Defendant The National City Bank of New York is a national banking association organized under the laws of the United States of America, with principal office in the city and State of New York, and this is a suit of a civil nature arising

out of a transaction involving banking in an insular possession of the United States, namely, the Island of Puerto Rico.

2. The plaintiff, John Martinez, on, prior and subsequent to November 18, 1946, maintained in his individual name a deposit account with the San Juan, Puerto Rico Branch of the defendant. Under date of November 16, 1946, the plaintiff drew a check on the said account, payable to one Telesforo del Valle, for the amount of $1,000.

3. The plaintiff, together with the said Telesforo del Valle, also maintained, on and prior to November 18, 1946, a joint deposit account with the said San Juan Branch of the defendant, the said account being entitled "John Martinez and/or Telesforo del Valle". The said account is hereinafter referred to as "the joint account".

4. The aforesaid Telesforo del Valle, on, prior and subsequent to November 18, 1946, also maintained a deposit account in his individual name with the said San Juan Branch of the defendant.

5. At the opening of business on November 18, 1946, which was at or a few minutes before nine o'clock in the morning, Telesforo del Valle presented to Manuel Bermudez, one of the tellers in the said San Juan Branch of the defendant, a deposit slip made out on one of the printed forms used by the said Branch, indicating the desire of the said Telesforo del Valle to deposit to his individual account the sum of $1,610.15. The deposit was indicated on the slip as being in bills and not in checks.

6. Simultaneously with presentation of the deposit slip to the teller, Telesforo del Valle also presented to the teller the check drawn on the individual account of John Martinez for $1,000 mentioned in finding number 2 above and two other checks for $50 and $560.15, respectively, both drawn on the joint account of Martinez and del Valle. The total of the three checks was the same as the amount shown on the deposit slip, namely, $1,610.15.

7. Upon presenting the deposit slip and the three checks to the teller, Telesforo del Valle requested the teller to cash the three checks and to deposit the cash to his individual account, as indicated in the deposit slip.

8. The teller left his cage and went to the current account department of the defendant and verified from the ledger sheet that there were sufficient funds, in the individual account of John Martinez to cover the check for $1,000. The teller did not, at that time, examine the ledger sheet of the joint account. The teller returned to his cage and entered in the passbook of Telesforo del Valle a credit for the amount of the deposit, namely, $1,610.15. Del Valle then left the bank at approximately three minutes after nine o'clock. The deposit slip and the checks were in the usual course of business sent to the transit department of the bank.

9. Shortly before nine o'clock on the same morning, namely, November 18, 1946, John Martinez went to the desk of Manuel Net, the officer of the defendant then in charge of receiving stop payment orders, and stated that he wanted to stop payment on the $1,000 check mentioned in finding number two, and to close the joint account mentioned in paragraph 3. Following the usual practice, Net went to the current accounts department and verified from the ledger sheet that the check for $1,000 had not been charged to the account of Martinez. Net returned to his desk and filled out a stop payment order on the bank's printed form for signature by Martinez. The stop payment order indicates that it was signed at nine o'clock in the morning.

10. Following the signing of the stop payment order, Net produced the ledger sheet for the joint account of Martinez and del Valle. At that time Martinez produced a blank check signed by himself and Telesforo del Valle, and stated to Net that the check had beeen given to him to fill out for the amount of the balance in the account. Martinez filled out the blank check for $1,514.72. The balance shown on the ledger sheet for the joint account at that time was $1,581.72. Martinez thereupon filled out a deposit slip for the deposit of this check and others to his individual account, and left the banking offices. Martinez finished his business with Net and left the bank about 9:10 or 9:15 in the morning.

11. Net testifies that at the time Martinez was signing the stop payment order, he saw Telesforo del Valle at the teller's window and told Martinez of this fact, and that Martinez stated, "I know it". Martinez denies that he saw del Valle in the bank at that time and denies that Net told him of his presence there. The Court finds that Net did see del Vallee at the tellers' window and did tell Martinez of that fact.

12. It is the usual practice of the defendant bank in handling stop payment orders to observe the following steps; namely, to determine from the ledger in the current accounts department whether the check in question has been charged to the depositor's account; if not, the officer in charge then fills out a printed form of stop payment order, and has the depositor sign the same; upon the signing of the stop payment order, the officer in charge directs his secretary to fill out typewritten notices for each teller, containing a description of the check, as well as a typewritten notice to be affixed to the depositor's ledger sheet. Once this is done, the officer or his secretary take the notices to each teller and to the current accounts department, and causes each teller to initial the original stop payment order. It is not the practice of the defendant to give verbal notice to tellers' of stop payment orders. Shortly after Martinez's departure from the Bank on this occasion, and at about 9:30 in the morning, Net commenced personally to obtain the initials of the individual tellers on the original stop payment order signed by Martinez. He obtained the initials of the tellers in cages numbered one and two. Upon his arrival at cage three, occupied by Bermudez, he was advised by Bermudez that the check for $1,000 had already been paid and had gone to the transit department. Bermudez did not initial the stop payment order, and had no notice of the stop payment order until that time.

13. All of the checks were charged by the bank to the respective account upon which drawn; that is, on November 18, 1946, the $1,000 check was charged to the account of John Martinez; the two checks for $50 and $560.15 were charged to the joint account of Telesforo del Valle; and the check for $1,514.72 was charged to the joint account and credited to the individual account of John Martinez. The account of Telesforo del Valle was credited with the amount of $1,610.15 shown on his deposit slip.

14. During the course of the day of November 18, 1946, Net placed a rubber stamp across the face of the $1,000 check reading "Payment Stopped". On that same date the account of del Valle was charged with the three items, namely, $1,000, $560.-15, and $50. The account of Martinez was credited with $1,000 on November 19, 1946. Notices were sent out to del Valle indicating these charges and notice was given to Martinez that payment of his check for $1,000 had been stopped.

15. On November 20, 1946, del Valle appeared at the bank protesting the charges so made to his account, and upon advice of counsel the bank again reversed them, crediting del Valle with the amount of $1,610.15 as shown on his deposit slip, and charging Martinez with the amount of $1,000 check. These entries were made on November 20, 1946.

16. Four items were charged to the joint account on November 18, 1946, in the following order, namely, $50, $560.15, $1,-514.72, $17, and $50, as a result of which the joint account was overdrawn in the amount of $610.15. On November 20, 1946, the bank charged this amount to the account of Martinez.

## Conclusions of Law

A. The Court has jurisdiction of this proceeding by virtue of the provisions of section 15 of the Banking Act of 1933, 12 U.S.C. 632, 12 U.S.C.A. § 632.

B. As a result of the transaction between the teller Bermudez and Telesforo del Valle at the opening of business on November 18, 1946, the relationship between the bank and del Valle became that of debtor and creditor for the amount of $1,610.15. The giving of credit to del Valle for that amount was practically and legally the same as if the teller had paid the money to del Valle and had received it again on deposit. Cohen v. First Nat. Bank of Nogales, 1921, 22 Ariz. 394, 198 P. 122,

547

124, 15 A.L.R. 701.

■ C. As regards del Valle, the Bank had thereafter no right to avail itself of the provision of its deposit slip, which states:

"Credit given for items drawn on or payable at this office shall be provisional subject to revocation at or before the end of the day on which deposited in the event the items are found not payable for any reason."

The bank's right to avail itself of this provision would have depended upon the implied acceptance by del Valle of this provision, which was negatived by del Valle's demand that the checks be cashed and the cash deposited by his account, and by his act in filling in his deposit slip showing only the deposit of cash.

■ D. The provision contained in the stop payment order to the effect that the bank shall not be liable if "payment be made contrary to this request, if such payment occur through inadvertence and accident", is a valid and binding part of the contract between the Bank and Martinez, and exempts the bank from the effect of inattention, the result of carelessness, oversight, mistake, or fault of negligence. Tremont Trust Co. v. Burack, 1920, 235 Mass. 398, 126 N.E. 782, 784, 9 A.L.R. 1067; Gaita v. Windsor Bank, 1929, 251 N.Y. 152, 167 N.E. 203; Edwards v. National City Bank of New York, 1934, 150 Misc. 80, 269 N.Y. S. 637.

■ E. There is no evidence that Net knew or had reason to know that del Valle's presence at the teller's window at the moment when Martinez was signing the stop payment order was related to the check for $1,000, and there is no evidence that Martinez, who had an opportunity to do so, directed his attention to this possibility. Under such circumstances, it does not appear that Net's failure to depart from the usual procedure for handling stop payment orders was in any way improper, or that Net was guilty of any breach of duty to Martinez.

■ F. Even if it should be held that Net, contrary to the usual practice of the defendant, should in this particular case have given the teller verbal notice of the stop payment order, his failure to do so was at most the result of his failure correctly to appraise the situation, and may thus be characterized as inadvertence within the meaning of the word as used in the stop payment order and did not amount to a wilful disregard of the notice, in either case the defendant is not liable for its failure to stop payment of the check for $1,000.

■ G. From information furnished by Martinez the defendant was aware that the blank check on the joint account which Martinez filled out on November 18, 1946, was held by him only for the purpose of drawing out the balance of the joint account, by agreement between del Valle and Martinez, and that Martinez was thus acting as agent for del Valle in filling out the blank check. As a result of the payment of the two checks aggregating $610.15 at the opening of business on November 18, 1946, the balance in the joint account at the time that Martinez filled out the blank check for $1,514.72 was actually $971.15, and was reduced to $904.5 as a result of the subsequent payment of two checks for $17 and $50. Martinez exceeded his authority in filling out the check for $610.15 in excess of the balance in the account, and the defendant properly charged his account with the resulting overdraft.