The CONJUGAL SOCIETY COMPOSED OF PEDRO JUVENAL ROSA and Rosario Amador De Rosa; Pedro Juvenal Rosa and Rosario Amador De Rosa, Individually, Plaintiffs,

v.

CHICAGO TITLE INSURANCE COMPANY and First Federal Savings and Loan Association of Puerto Rico, Defendants.

Civ. No. 79–20.

United States District Court,
D. Puerto Rico.

Oct. 13, 1981.

Harry Segarra, Santurce, P. R., for plaintiffs.

Stanley R. Segal, San Juan, P. R., for First Federal Savings and Loan Assoc. of P. R.

Norberto Medina Zurinaga, San Juan, P. R., for Chicago Title Ins. Co.

## OPINION AND ORDER

PEREZ–GIMINEZ, District Judge.

The history of this case,[1] according to the stipulation of facts filed by the parties, briefly summarized, is as follows:

Plaintiffs filed this action against Chicago Title Insurance (Chicago Title) and First Federal Savings and Loan Association of Puerto Rico (First Federal) invoking federal jurisdiction under 12 U.S.C. 632, among other statutes. Plaintiffs were the owners of a parcel of land located within the Municipal-

1. The facts of the case at bar are more fully described in our Opinion and Order of September 15, 1980.

ity of Guaynabo, Puerto Rico. Plaintiffs sold the parcel of land to Torre de Caparra Corporation (Torre de Caparra) for a certain sum, of which they received part, and on the remaining debt there was constituted a first mortgage in favor of plaintiffs. Two other mortgages were constituted by Torre de Caparra, one in favor of Continental Mortgage Investors (Continental Mortgage) and the other in favor of codefendant Chicago Title. Plaintiffs subordinated their mortgage to the mortgage in favor of Continental Mortgage. Subsequently, interim financing was provided by defendant First Federal to Torre de Caparra, but as a condition First Federal obtained from plaintiffs the further subordination of the first mortgage originally held by plaintiffs. Thereafter, the apartment building was not completed. The mortgages in favor of Chicago Title and Continental Investors were cancelled and codefendant First Federal executed its mortgage and acquired for itself the land property. Plaintiffs claim that as a result of a plan to defraud on the part of the defendants, they were deprived of their mortgage credits in the amount of $111,500.00, plus interest, and, thus, have suffered losses in the amount of $500,000.00.

Defendants moved to dismiss this action for lack of subject matter jurisdiction. On September 5, 1980, we entered an Opinion and Order dismissing this action. On April 1, 1981, the United States Court of Appeals for the First Circuit, 646 F.2d 688, reversed our Opinion and Order dismissing the amended complaint for lack of jurisdiction on grounds that 12 U.S.C. 632 was not applicable in Puerto Rico, and the case was remanded for further proceedings not inconsistent with the First Circuit's Opinion, 497 F.Supp. 41.

The remaining issue before this Court is whether or not the plaintiffs' alleged cause of action is one arising out of a banking transaction pursuant to 12 U.S.C. 632.

Plaintiffs want us to read the statute at issue in the case at bar in a broad manner so as to include "all suits of a civil nature". However, 12 U.S.C. 632 [2] speaks of "all suits of a civil nature at common law or in equity ... arising out of transaction involving international or foreign banking, or banking in a dependency or insular possession of the United States or out of other international or foreign financial operations...." As stated by the First Circuit in the recent case of *Díaz v. Pan American Federal Savings & Loan Ass'n.*, 635 F.2d 30, at 31 (1 Cir., 1980):

"The statute is otherwise limited to cases arising from 'transactions' and 'other ... financial operations' of banking institutions. We think that this limited range of companion parts of the same statutory section militates in favor of a similar narrow limitation for the term 'banking'. Cf. *United States v. Turkette*, 632 F.2d 896, at 899 (1 Cir., 1980) (applying principle of *ejusdem generis*). Moreover, a commonsense approach to a statute principally concerned with financial transactions of an international character suggest that 'banking' includes only traditional banking activities. As was the district court, we are unable to believe that Congress intended to reach all cases in which a bank is a party...."

The First Circuit, therefore, concluded "that the filing of a criminal complaint as a result of plaintiff's alleged passing of bad checks falls outside the scope of traditional banking and that the district court properly dismissed."

Jurisdiction has been found in an action involving foreclosure of a mortgage where

**2.** 12 U.S.C. 632 provides in pertinent part: "Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insural possession of the United States, or out of other international or

foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; ...."

the mortgagee is a corporation organized under the laws of Congress. See, e. g., *Chase Manhattan Bank v. Corporación Hotelera*, 516 F.2d 1047 (1 Cir., 1975); *First Federal Savings & Loan Ass'n. of Puerto Rico v. Zequeira, supra; First National City Bank v. González & Co. Sucr. Corp.*, 308 F.Supp. 596 (D.C.P.R., 1970);[3] and *S & L, etc. v. Ruiz de Jesús*, 644 F.2d 910 (1 Cir., 1981).

There is no doubt that in cases where the controversy involved certain stop payments of checks, *Martínez v. National City Bank of New York*, 80 F.Supp. 545 (D.C.P.R., 1948), or where the bank sued on a promissory note, *National City Bank of New York v. Puig*, 106 F.Supp. 1 (D.C.P.R., 1952), or where plaintiff sued to cancel note and defendant bank counterclaimed for balance due on note, *Tirado v. Chase National Bank of City of New York*, 142 F.2d 894 (1 Cir., 1944), the transaction giving rise to those actions is one arising out of banking, as contemplated by 12 U.S.C. 632.

In *González Román v. Federal Land Bank of Baltimore*, 303 F.Supp. 482 (D.C.P.R., 1969) this Court held that, notwithstanding the fact that the foreclosure action had originally been brought under 12 U.S.C. 632, an action challenging the validity of said foreclosure was not one arising from a transaction involving banking in a dependency or insular possession of the United States.

Traditional banking activities for a federal savings and loan association are the making of loans, the receiving of saving deposits and the investing in certain types of securities; 12 U.S.C.A. 1464(b) and (c); *First Federal Savings & Loan Ass'n. of Puerto Rico v. Zequeira*, 305 F.Supp. 37 (D.C.P.R., 1969).

The present litigation is not one arising from a transaction involving banking. There is no relationship related to banking or any other financial operation between plaintiffs and First Federal. The fraudulent scheme alleged by plaintiffs which al-

legedly gives rise to their cause of action sounds in tort, and, thus, is rather an independent action. See, e. g., *S. Canet & Co. v. N. Santini & Co., Inc.*, 44 P.R.R. 78 (1932).

The Court concludes that the filing of the present complaint falls outside the scope of traditional banking, and, therefore, the action must be dismissed.

Accordingly, the Court hereby ORDERS that this action be DISMISSED for lack of jurisdiction over the subject matter.

IT IS SO ORDERED.

---

**3.** The court therein found that the appointment of tutor as guardian *ad litem* and the ratification of the action of the first tutor in executing

a stipulation were matters incidental and ancillary to the jurisdiction of the court over the mortgage foreclosure action.