**Jose Roberto FUMERO–VIDAL, Ana Teresa Perez De Fumero and their Conjugal Partnership, Plaintiffs,**

v.

**FIRST FEDERAL SAVINGS BANK, Defendant.**

**Civ. No. 91–1617–G.**

United States District Court, D. Puerto Rico.

March 6, 1992.

José A. Pagán Nieves, San Juan, P.R., for plaintiffs.

**1276**

Carmen I. Sánchez Ríos, Santurce, P.R., Pedro J. Santa Sánchez, O'Neill & Borges, Hato Rey, P.R., for defendant.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

Plaintiffs have sued the defendant Bank for damages allegedly caused by the defendant's breach of an agreement with plaintiffs and others pertaining to a loan to a corporation, repayment of which was guaranteed by one of the plaintiffs. Plaintiffs assert federal jurisdiction under 12 U.S.C. § 632 on the basis that their suit arises out of traditional banking transactions executed by the defendant, which was organized under laws of the United States. They also allege a related pendent Commonwealth claim for infliction of emotional distress, under Title 31 L.P.R.A. Section 5141, Civil Code of Puerto Rico, Article 1802. Plaintiffs made similar allegations in their answer to an earlier collection action brought by the Bank against them and others in the Superior Court of Puerto Rico, as well as in a counterclaim filed against the Bank. In the instant federal case, defendant Bank has filed a motion to dismiss on two grounds: lack of subject matter jurisdiction and exceptional circumstances warranting surrender or stay of federal jurisdiction under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[1] We heard oral argument and received multiple memoranda of law from both parties. For reasons that follow, we conclude that jurisdiction clearly exists but that defendant has shown exceptional circumstances warranting application of the *Colorado River* doctrine. We therefore order that defendant's motion to dismiss be granted.

## FACTUAL BACKGROUND

On May 7, 1987 the Bank loaned $50,000 to Servi–Plantas Corporation, a landscaping service operated by one Alvarez. The note was signed on behalf of the corporation by Alvarez as president and Dr. Fumero as chairman and provided, *inter alia*, for payment by monthly installments of $833 principal plus interest. On the same date, Fumero and one Hernandez executed a comprehensive, four-page letter of guaranty. The proceeds of the loan were presumably deposited in a corporate checking account at the Bank, the "–951" account, and used for corporate purposes. The monthly repayment installments of $833 principal plus interest (averaging about $400 monthly) were deducted automatically from the –951 account and payment notices were mailed to the corporation. This procedure was followed until some time in 1989, when payments fell several months in arrears. In November, 1989 Alvarez closed the –951 corporate account and a month later opened a personal account, the "–453" account, in his own name "D/B/A Servi–Plantas". Thereafter, Alvarez wrote four checks on the personal account payable to the Bank in repayment of the loan to the corporation, including a check for $2,000 on January 26, 1990. Payments remained in arrears, however, and on May 14, 1990 the Bank sued the corporation and the guarantors in the Superior Court of Puerto Rico for the unpaid balance: $24,747 principal plus interest then due of $1,060.

### Parallel Suit in Superior Court

In response to the Bank's complaint in the Superior Court for the "collection of monies", Fumero and Hernandez filed an answer on August 22, 1990, a third party complaint against Alvarez and Servi–Plantas Corporation September 11 and a counterclaim against the Bank November 16. The answer included an affirmative defense that the Bank failed to inform the guarantors of the status of the debt before filing suit. The third party complaint alleged that Alvarez and the Corporation used the entire loan for their benefit, breached their obligation to the Bank and should reimburse the guarantors for any sums collected from them by the Bank;

---

1. At the hearing on the motion, defense counsel stated that defendant considered including a third ground, viz., failure to state a claim upon which relief can be granted, but withheld it inasmuch as it may be asserted later under Rule 12(h)(2), Fed.R.Civ.P.

and also that Alvarez's negligence damaged the guarantors' credit and caused them humiliation. On October 8, the Bank filed a motion for partial summary judgment against the guarantors. On November 16, Dr. Fumero, his wife and their conjugal partnership, together with Dr. Hernandez,[2] filed a counterclaim in four counts. The first two counts contain allegations similar to those asserted in the federal suit filed six months later, viz., that the Bank's own conduct negligently caused the default on the corporate note, in that (a) it permitted Alvarez to withdraw cash from account –951 without deducting automatically the monthly installment due on the note, (b) it treated Alvarez as if he were the corporation and cooperated with him in closing account –951 without requisite corporate resolutions and failed to notify the guarantors, and (c) it permitted and cooperated with Alvarez in opening a personal account doing business as Servi–Plantas, dropping the word "Corporation" from the name of the account, and enabled him over a five-month period to divert numerous corporate receipts by depositing checks payable to the corporation into his personal account, and failed to notify the guarantors. The third and fourth counts, which only the Fumeros brought, allege that the Bank's aforesaid negligence, coupled with its serving process on Dr. Fumero in his office in front of his employees and patients and naming him a debtor in the Boletin Oficial de Puerto Rico, caused the Fumeros serious shame and anguish and damaged their reputation and good name, in a sum of not less than $375,000 each.

The parties have litigated the Superior Court suit actively. On November 8, 1990, Fumero and Hernandez requested production of documents by the Bank and Alvarez, who on November 15, objected on the ground that compliance would be unreasonably burdensome. The documents sought from the Bank were produced on November 27. On November 16, the guarantors addressed an interrogatory to Alvarez, and on January 10, 1991, a further request for production of documents. Alvarez answered the interrogatory of November 16, 1990 and a request for admissions on March 21, 1991. On April 4, 1991, Alvarez moved for summary judgment on the third party claim, denied by the Superior Court after hearing on September 23, 1991. On May 15, 1991, five days after the date of the Fumeros' complaint in the instant case, the guarantors-third party plaintiffs moved in the Superior Court for an attachment of a vehicle used by Alvarez and delivery of the proceeds of the sale of some corporate property allegedly received and retained by Alvarez. The Superior Court has managed the case actively, setting discovery deadlines and scheduling pre-trial conferences (which conferences, however, have been postponed for reasons beyond the Court's control).

### The Instant Federal Suit

In the instant proceedings, the only plaintiffs are the Fumeros and the only defendant, the Bank. The complaint was filed on May 13, 1991 and asserts two causes of action, the first under 12 U.S.C. § 632,[3] which provides in pertinent part as follows:

Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district

---

2. It is not entirely clear that Dr. Hernandez joined in the counterclaim because he is not named as a counter claimant in the title of the pleading and appears to seek no specific relief. But this uncertainty has no bearing on the pending motion to dismiss.

3. The complaint alleges that the defendant Bank is a nationally chartered institution, the first essential element of jurisdiction under 12 U.S.C. § 632.

courts of the United States shall have original jurisdiction of all such suits[.] The allegations herein are substantially the same as those in the Superior Court counterclaim, except that plaintiffs allege here: (a) that the Bank breached an agreement with the corporate borrower and guarantors to collect monthly installment payments by automatic deductions from account; (b) that their damages were caused by the defendant's own abrogation of the arrangement for repayment of the loan, on which plaintiffs relied, when it permitted and cooperated with Alvarez in closing the corporate account and opening a personal account for him into which, with defendant's knowledge, he diverted corporate receipts; (c) that said loans, notes, collection agreements, openings and closings of checking accounts are traditional banking transactions[4] and (d) that they learned from third parties the nature and extent of such transactions after the Bank's collection suit was commenced. Plaintiffs' second cause of action is entitled "Pendent State Claim" and its allegations are substantially the same as those in the Superior Court counterclaim, except that the ad damnum has been raised to $3,000,000. On July 10, 1991, defendant filed a motion to dismiss, and supporting memorandum of law, on two grounds: lack of subject matter jurisdiction and pendency of prior concurrent proceedings between the parties, involving the same issues, in the Superior Court. Plaintiffs' opposition and opposing memorandum, oral argument on defendant's motion[5] and more submissions and motions followed in due course.

## SUBJECT MATTER JURISDICTION

■ In this type of case, where no international banking ramifications exist, no disposition of foreign owned property will occur, etc., the requirements for subject matter jurisdiction under 12 U.S.C. § 632 are well-established. First, one of the real parties in interest must be a corporation organized under the laws of the United States. Here, according to the complaint, the defendant First Federal Savings Bank is a nationally chartered institution. Second, the suit must arise out of "transactions ... involving ... banking in a dependency or insular possession of the United States". The continuing applicability of § 632 to banking in Puerto Rico after it became a Commonwealth was decided in *First Federal Savings & Loan Association v. Ruiz De Jesus*, 644 F.2d 910 (1st Cir.1981). Finally, "banking" in the quoted phrase means traditional banking activities. *Conjugal Society Composed of Juvenal Rosa v. Chicago Title Insurance Company, supra*, 690 F.2d at 4. Thus the key question here regarding subject matter jurisdiction is whether plaintiffs' suit arose out of transactions involving traditional banking activities. Under both common understanding and controlling decisional precedents, there should be little doubt that it did.

We look first at the nature of the underlying banking transactions and activities. *See Telecredit Service Center, v. First National Bank of the Florida Keys*, 679 F.Supp. 1101, 1107 (S.D.Fla.1988). The gist of plaintiffs' suit is that the Bank breached an oral agreement with a corporate borrower and two guarantors of repayment by the borrower, and that it collaborated with an officer of the corporation, who was not a guarantor, in diverting corporate receipts to his personal bank account, contrary to both the agreement and proper banking practices. The making and collection of loans and issuance of documents evidencing them, such as notes and guaranties, the opening and closing of checking accounts and the processing of checks drawn upon them, and the filing of lawsuits for the collection of monies when loans are in default seem clearly to be the warp and woof of traditional commercial banking.

---

4. The second essential element of jurisdiction under 12 U.S.C. § 632 is that the suit arise "out of transactions involving ... banking". *The Conjugal Society Composed of Juvenal Rosa v. Chicago Title Insurance Company*, 690 F.2d 1 (1st Cir.1982).

5. Defendant's motion also requests that, if dismissal be denied, the court alternatively grant a stay and remand the Pendent State Claim to the Superior Court.

Legal precedents are to the same effect. The leading case is *Conjugal Society Composed of Juvenal Rosa et al, v. Chicago Title Insurance Company*, 525 F.Supp. 268 (D.P.R.1981), rev'd 690 F.2d 1 (1st Cir. 1982), in which the opinions of the trial and appellate courts, especially when considered together, are definitive. Plaintiffs in that case agreed to a subordinated mortgage position on land they had sold, in exchange for protection by a performance bond and other assurances on which they relied, given by a savings and loan association. When the bond and assurances were terminated, they sued for fraud. In defining traditional banking activities, the trial judge stated,

> There is no doubt that in cases where the controversy involved certain stop payments of checks, *Martinez v. National City Bank of New York*, 80 F.Supp. 545 (D.C.P.R., 1948), or where the bank sued on a promissory note, *National City Bank of New York v. Puig*, 106 F.Supp. 1 (D.C.P.R., 1952), or where plaintiff sued to cancel note and defendant bank counterclaimed for balance due on note, *Tirado v. Chase National Bank of City of New York*, 142 F.2d 894 (1 Cir., 1944), the transaction giving rise to those actions is one arising out of banking, as contemplated by 12 U.S.C. 632.

*Id.*, 525 F.Supp. at 270.

However, the judge held that jurisdiction under § 632 was lacking because plaintiffs' claim was an independent action in tort, unrelated to traditional banking activities. On appeal, the Circuit Court reversed, holding that "the subordination agreement, *with* its underlying financing arrangement, is clearly within the statute." *Id.*, 690 F.2d at 3 (emphasis in original). Plaintiffs' allegations in the instant case, viz., that they relied on the defendant's agreement to deduct automatically monthly payments from the borrower's checking account and that the defendant then closed that account without notice to plaintiffs and thereafter permitted diversion of corporate receipts, are strikingly similar. Significant, too, are the appellate court's expansion in *Conjugal Society* of the lower court's interpretation of the banking activities covered by § 632 and its failure to qualify the trial judge's description, quoted *ante*, of cases arising out of traditional banking activities. On the contrary, the Court of Appeals opinion, at 4, cites with approval *National City Bank v. Puig*, 106 F.Supp. 1 (D.P.R.1952), which the District Court cited as supporting § 632 jurisdiction "where the bank sued on a promissory note." [6] An issue in the *Puig* case was the validity of a continuing letter of guaranty, relied on by a bank in granting a loan, an issue quite similar to those in the instant case.

The other leading First Circuit decision on the scope of § 632 jurisdiction is *Diaz v. Pan American Federal Savings & Loan Association*, 635 F.2d 30 (1st Cir.1980). In that case, plaintiff had been prosecuted for passing bad checks drawn against the defendant bank and alleged that the bank had instigated the prosecution maliciously or negligently. Held: the bank's filing a criminal complaint based on the alleged passing of bad checks was not a traditional banking activity. In our view, the decision in *Diaz* is no obstacle to § 632 jurisdiction in the instant case. Defendant's memoranda strongly urge the contrary, based largely on repeated oversimplifications of plaintiffs' allegations.[7] As explained *ante*, the crux of plaintiffs' claims before this court, in our understanding, is the defendant's alleged failure to honor an oral agreement and transferring a corporate depositor's checking account without proper authorization.

---

**6.** Does this mean that the federal Bank's suit in the Superior Court, being a suit against the corporate defendant on a promissory note, was removable without more under § 632? We need not decide, though the question is addressed *post* under the subheading "Motivation factors."

**7.** E.g., plaintiff "basically complains that First Federal instituted a collection action against

him"; "institution of the pending collection action ... constitutes the crux of plaintiffs' claims before this court"; and "Fumero merely complains that he, as guarantor of a commercial loan, never found out, until he was served with process, that his joint co-debtor had defaulted on the loan."

Finally, defendant is simply mistaken in contending at various points in its memoranda that § 632 jurisdiction requires inclusion of a federal claim [8]. No such requirement appears in the statute, which begins with the phrase, "Notwithstanding any other provision of law," or in decisions construing it.

## THE COLORADO RIVER DOCTRINE

■ Defendant's second ground for dismissal is based on the doctrine enunciated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and later cases. The so-called *Colorado River* doctrine operates as an alternative to the three traditional categories of abstention in circumstances in which they are inapplicable. *Id.* at 817, 96 S.Ct. at 1246. It rests not on "considerations of state-federal comity or on avoidance of constitutional decisions, as does abstention, but on 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." ' " *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983).

The Court of Appeals for the First Circuit, in applying the *Colorado River* doctrine, has repeatedly noted that the Supreme Court itself "took care to emphasize [the doctrine's] narrowness." *Villa Marina Yacht Sales v. Hatteras Yachts (Villa Marina I)*, 915 F.2d 7, 12 (1st Cir.1990). For example:

> Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, the [Supreme] Court held that the surrender of jurisdiction in favor of "wise judicial administration" is permissible only in "exceptional" circumstances, *id.* at 818, 96 S.Ct. at 1246.

Thus, while "the general principle [in an overlap between two federal district courts] is to avoid duplicative litigation," *id.* at 817, 96 S.Ct. at 1246, the pendency of an overlapping state court suit is an insufficient basis in and of itself to warrant dismissal of a federal suit. Because "[o]nly the clearest of justifications will warrant dismissal" *id.* at 819, 96 S.Ct. at 1247, the circumstances permitting a district court to dismiss a case under the *Colorado River* doctrine "are considerably more limited than the circumstances appropriate for abstention," *id.* at 818, 96 S.Ct. at 1246.

*Villa Marina I*, 915 F.2d at 12 (editing in original). The First Circuit Court has also recently directed that "[t]o ensure that dismissals occur only in exceptional circumstances, the district court must weigh the relevant factors 'with the balance heavily weighted in favor of the exercise of jurisdiction.' " *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts (Villa Marina II)*, 947 F.2d 529, 532 (1st Cir.1991).

Before embarking on the requisite balancing test, some preliminary observations are in order. First, several comprehensive decisions have been issued by the Court of Appeals for this Circuit on the *Colorado River* doctrine, four of them last year, viz., *Rojas—Hernandez v. Puerto Rico Electric Power Authority*, 925 F.2d 492 (1st Cir. 1991); *Gonzales v. Cruz*, 926 F.2d 1 (1st Cir.1991); *Burns v. Watler*, 931 F.2d 140 (1st Cir.1991) and *Villa Marina II, supra.* Therefore we shall not trace the derivation and rationale of the various *Colorado River* factors and other proper considerations. We shall simply apply them. Second, subject matter jurisdiction in all four cases rested on diversity of citizenship. In no case involving the *Colorado River* doctrine, last year or earlier, has federal jurisdiction been based on the "deemed to arise" provision of 12 U.S.C. § 632. Third, while the form of the instant defendant's application for abstention is a motion to dismiss the complaint, we have not confined our analysis to the allegations of the

---

**8.** E.g., "There are no claims ... of a violation of federal law as would justify resort to this court under 12 U.S.C. § 632".

complaint, but have invited and received factual accounts of the parallel suit in the Superior Court and also submissions as to the law of the Commonwealth.[9] *Accord* C. Wright & A. Miller, *Federal Practice and Procedure* Civil 2d § 1357, p. 299 ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.").

We turn now to the "careful balancing of the important factors" mandated by the *Moses H. Cone* case, 460 U.S. at 16, 103 S.Ct. at 937, and consideration of "the full range of factors relevant under *Colorado River*," mandated by *Gonzales v. Cruz, supra,* at 7. We discuss the various factors in the order of our reliance upon them. We note that we have not relied on factors one and two, and do not discuss them, because they are inapplicable.

*Avoidance of piecemeal litigation.* Plaintiff seeks to litigate in this court a portion of the Superior Court case, viz., a possible set-off against the Bank's undisputed, larger[10] straight-forward claim on the unpaid balance due on a promissory note. Plaintiffs have not disputed in either forum the calculation of the balance of $24,747 plus interest. Rather they contend, *inter alia,* that, but for the Bank's misconduct extending over a period of approximately six months, the unpaid balance would have been reduced by six automatic monthly payments of principal totalling $4,998. Since Alvarez made four payments from his personal account, including one on January 26, 1990 for $2,000, plaintiffs' monetary loss attributable to the Bank's

alleged banking misconduct would seem to be in the vicinity of $3,000.[11]

The Bank's suit in Superior Court names three defendants, only one of whom, Dr. Fumero, is a party to the instant suit. Plaintiffs' initial affirmative response in the Superior Court was a third-party complaint against Alvarez and Servi–Plantas, neither of whom is a party to the instant suit. Nor is Dr. Hernandez, the co-guarantor whose liability, defenses and possible set-off on the note are identical to Dr. Fumero's, a party. As a result, the following problems might arise should the pending litigation go forward in the federal court. First, assume that the Fumeros' claim for set-off succeeds in the instant case but that their claim jointly with Hernandez is rejected in the Superior Court—how should the benefits of set-off be shared, if at all, by the co-guarantor? Or, based on the same scenario, assume that the Fumeros also succeed in the Superior Court in their third party claim against Alvarez (whose motion for summary judgment was denied on September 23, 1991)—what reduction in Alvarez' liability, if any, would result from the federal judgment? On the other hand, if the Bank were to prevail on the merits in federal court, judgment in its favor would not be *res judicata* in Superior Court with respect to Hernandez' counterclaim and the issues might have to be retried. Conversely, the judgment entered in the Superior Court, in whomevers' favor, will very likely be *res judicata* in the instant proceedings.

These potential problems would be aggravated by the lack of consistency and finality in the statement of plaintiffs' contentions, which seem to expand without explanation. For instance, plaintiffs' original defense to the Bank's suit on the note

**9.** The parties' submissions triggered oppositions, a motion to strike and counter-submissions by their opponents, as to which the court is filing a separate memo and order of even date.

**10.** At this juncture, we prescind from plaintiffs' own large damages claim for negligent infliction of emotional harm.

**11.** The loss would be greater if the Bank failed to deduct monthly payments from the –951 cor-

porate account prior to its being closed in November, 1989, assuming the funds in the –951 account were sufficient, or if the Bank knowingly permitted Alvarez to give preferences to other corporate obligations or to divert corporate receipts which would otherwise have been applied to reduce the loan. But no evidence of any of this was presented by either party; and, on any hypothesis, the unpaid balance due the Bank exceeded plaintiffs' monetary loss allegedly caused by the Bank's misconduct.

rested on a right to be informed by the Bank of the status of the loan. Their counterclaim charged negligence, not breach of contract. Their original allegation of actionable humiliation was directed against Alvarez, not against the Bank. Their monetary loss, estimated *ante*, has never been alleged specifically.

*Order of filing and relative progress.* The Superior Court suit commenced on May 14, 1990; the federal on May 13, 1991. In the Superior Court, pleadings are complete and pre-trial discovery has ended; in the federal suit, only a complaint and motion to dismiss, with related papers, have been filed. Additionally, plaintiffs here have been aggressive participants there— filing a third party complaint, a counterclaim [12] and a request for attachment, as well as requests for documents and interrogatories. Plaintiffs have also succeeded there in defeating a motion for summary judgment filed by Alvarez in the third party action. Finally, the Superior Court has moved the case toward trial by setting discovery deadlines and scheduling pretrial conferences.

*Motivation factors.* We seek here not to determine plaintiffs' state of mind in filing their complaint, but to examine objective indications which suggest that this suit might be contrived and reactive to the Superior Court case and perhaps vexatious in compelling the defendant to press its claim for the collection of monies in two forums. As for motivation generally, if successful in maintaining this suit plaintiffs would avoid problems presented in the Commonwealth litigation. For example, on May 10, 1991, when plaintiffs brought the instant suit, the Bank's motion for summary judgment in the Commonwealth case had been pending for over six months and, with a discovery deadline less than two weeks away, would soon be ripe for court consideration and decision. Also, plaintiffs would avoid arguable inconsistencies in the Superior Court pleadings between their claims against the Bank and third-party defendant Alvarez. In addition, had plaintiffs sought to advance in Superior Court their claims made here, *viz.*, a breach of contract theory of the Bank's liability [13] and an increase by nearly tenfold of the *ad damnum* against the Bank, they would probably have applied for leave to amend their counterclaim, an application which might have been denied because tardy or prejudicial.[14] Of course, much of this discussion is speculative. Nevertheless, the *effect* of plaintiffs' filing the instant action, beneficial to them and to no others, was to by-pass problems and possible obstacles of their own making.

Contrivance is indicated, in our opinion, by the unfocused statement of the plaintiffs' claims of the Bank's alleged mishandling of the loan and related bank accounts, as contrasted with the clear, specific allegations and prayer for damages in the pendent state claim. The parties to the oral agreement which the Bank is charged with breaching are not specified, but left to inference; the corporate resolutions alleged to be a prerequisite to closing the –951 corporate bank account are not identified; a Bank obligation to notify the plaintiffs of the arrears in repayment of the

---

**12.** Plaintiffs minimize the significance of the counterclaim on the ground that failure to file one would, under Puerto Rican law, result in a waiver of the claims therein asserted. Defendant has not argued the contrary. However, the counterclaim has been one of the bases for discovery and pre-trial orders of the Superior Court.

**13.** There is no need to address at this time the apparent inconsistency between such a change in theory and plaintiffs' citing, in the jurisdiction paragraph of the instance complaint, only Title 31, L.P.R.A. § 5141, Civil Code of Puerto Rico, Article 1802. Said section governs liability "through fault or negligence". Other sections contained in Parts I and II of Subtitle 4 of the Code deal with obligations and contracts, their interpretation and enforcement; and are not referenced anywhere in the complaint.

**14.** See Puerto Rico Rules of Civil Procedure, Rule 13.1, 32 L.P.R.A. App.III (1979): "A party may amend his pleading once at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, he may amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

loan and of the closing of the –951 account is asserted, but without reference to any basis for such an obligation or to the terms of the guarantee agreement which on its face would seem to negate such an obligation; similarly plaintiffs assert rights to be informed by the Bank and to protect their credit without reference to any foundation for such rights. More significantly, inasmuch as Rule 8(a), Fed.R.Civ.P., calls for notice pleading rather than specification of evidence, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957), the part of the complaint based upon 12 U.S.C. § 632 contains no clear demand for judgment for the relief the plaintiffs seek, as required by Rule 8(a)(3). In sum, plaintiffs' complaint as to the defendant's traditional banking transactions appears to be primarily a vehicle on which to achieve federal jurisdiction for a much larger pendent state claim.

The reactive nature of the instant suit is evident from the relationship of plaintiffs' claims to the Bank's. Plaintiffs' claims, apart from the pendent state claim, are not separate and independent, but strictly defensive. They will be comprehensible only in the total context of the Bank's having issued the $50,000 loan and having received numerous payments on account from the Corporation and Alvarez.

In a *Colorado River* context, circumvention of the policy against plaintiff removal, see *American International Underwriters v. Continental Insurance Co.*, 843 F.2d 1253, 1261 (9th Cir.1988) and *Kent v. Cook*, 637 F.Supp. 1005, 1011 (N.D.Ill.1986) ("A defendant in a state case should not be allowed to circumvent the removal statute by simply filing a federal claim after failing to remove a case to federal court in a timely fashion."), is usually discussed either in connection with factor four, i.e., order of filing and relative progress of the

parallel suits, *see e.g., Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 310 n. 5 (1st Cir.1986), or under the heading of motivation, *see e.g., Gonzales v. Cruz, supra*, 926 F.2d at 4, as we do here. Circumvention of removal policy is not a factor favoring dismissal unless both parallel cases continue in existence, *Villa Marina II, supra*, 947 F.2d at 536, and unless plaintiffs in a later federal suit could have removed the state or Commonwealth litigation to the federal court, had they chosen to do so. At least one and perhaps both conditions prevail in the instant litigation. Plaintiffs have pursued their counterclaim in the Superior Court after filing their complaint here and they probably could have removed the Commonwealth suit to this court by filing a notice of removal pursuant to 28 U.S.C. § 1446.

Whether and when a civil action is removable without regard to the citizenship or residence of the parties turns on the nature of the claim stated by the state court plaintiff. If founded on a claim or right arising under the laws of the United States, it is removable. 28 U.S.C. § 1441. It may be that the Superior Court case was removable within 30 days after commencement, under the authority of *National City Bank v. Puig, supra*, cited with approval in *Conjugal Soc. Etc. v. Chicago Title Insurance Company., supra*, at 4, holding that 12 U.S.C. § 632 jurisdiction exists where the bank sued the maker of a promissory note and two other defendants as co-guarantors, which is precisely what the Bank did here on May 14, 1990. However, we attach little weight to this ancillary factor for several reasons: (a) the *Conjugal Society* and *National City Bank* cases did not concern removal jurisdiction [15] having been filed initially in the United States court; (b) whether the "deemed" jurisdiction established by 12 U.S.C. § 632 is within the

---

**15.** In a different context, the existence *vel non* of § 632 jurisdiction, plaintiffs urged that the complete nature of the Bank's claims and hence the full basis of § 632 jurisdiction became ascertainable for the first time during pre-trial discovery. But this fact, if demonstrable, would not enhance removability under 28 U.S.C. § 1446(b), since the Bank was compelled to disclose its records in response to the Fumeros'

motions and interrogatories; "... it is well established that when the plaintiff by a *voluntary* act interposes a federal question that did not appear in the complaint as originally filed, the defendant may remove the case to federal court." *Federal Deposit Insurance Corp. v. Otero*, 598 F.2d 627, 629 (1st Cir.1979) (emphasis added). See also *Telecredit Service Center v. First National Bank*, 679 F.Supp. 1101, 1105–7.

original jurisdiction founded on a claim arising under the laws of the United States, within the meaning of 28 U.S.C. § 1441, is doubtful, is a question of law not yet decided, so far as we are aware, and would call for extensive analysis, disproportionate to the application of the *Colorado River* doctrine in the instant case; and (c) the issue of the removability to crowded federal court dockets of seemingly routine collection suits by national savings banks and associations should not be decided definitely except after comprehensive briefing and argument, absent here.

*Moses H. Cone factors.* To the four factors discussed in the *Colorado River* decision, the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra,* at 23–27, 103 S.Ct. at 941–43, added two other factors to be assessed in deciding whether to surrender jurisdiction. Generally called factors five and six, the former considers the "source-of-law" i.e., whether state or federal law will control decision of the issues pending in the federal case; and the latter considers "the probable inadequacy of the state-court proceeding to protect" the rights of the party opposing abstention, ordinarily the plaintiff. In the instant case, the source-of-law factor is no obstacle to abstention, but is a neutral factor. As discussed *ante,* federal jurisdiction in this case is based neither upon diversity of citizenship nor federal question, but on a special "deemed" jurisdictional statute, 12 U.S.C. § 632. No questions of substantive federal law are presented and no federal banking policy is involved. State law exclusively will control. On the other side of the coin, this factor does not support abstention either, because the collection and defenses against collection of a promissory note and guarantee do not involve complex or novel questions of state law. *See Villa Marina I, supra* at 534–535.

As for probable inadequacy of the Superior Court to protect their rights, plaintiffs

have made no such contention. It would be difficult for them to do so, in light of the Superior Court's having ruled in their favor in denying Alvarez' motion for summary judgment, their having obtained extensive pre-trial discovery, sought an attachment of property, etc. Unlike the plaintiff in the *Villa Marina* cases, *see especially id.* at 947 F.2d at 536–537, the Fumeros have not submitted, by affidavit or otherwise, that they filed their federal complaint in order to obtain procedural options unavailable in the courts of the Commonwealth. Hence, the forum inadequacy factor is also neutral.

*Declaratory judgment suits.* A further ground urged by the defendant in support of its motion to dismiss on *Colorado River* doctrine is that the complaint is "in fact one for declaratory relief" under 28 U.S.C. § 2201. The controlling rule was explained and applied in *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 308–11 (1st Cir.1986): the exceptional circumstances test is applicable to declaratory judgment actions.[16] The decision in that case, at 309, n. 3, stated as follows:

> As our discussion indicates, *infra,* we agree that a federal court's duty to exercise its jurisdiction is relaxed in the declaratory judgment context....

> In thus applying the *Colorado River* factors in a declaratory judgment context—although without emphasis on a federal court's duty to exercise its jurisdiction—we are consistent with the numerous cases in this circuit and others which have applied the *Colorado River* factors in declaratory judgment actions....

Hence the question is presented in the instant case: is plaintiffs' complaint apart from the pendent state claim one for declaratory relief, in which case this "court's duty to exercise its jurisdiction is relaxed"? We think not.

---

**16.** In its multiple submissions in this area of the law, defendant quotes from the decision in the *Fuller Co.* case with strange selectivity, skirting around the Circuit Court's explicit disavowal of *Hartford Accident & Indemnity Co. v. Hop–On*

*International Corp.,* 568 F.Supp. 1569, 1572 (S.D.N.Y.1983) and arguing inapplicability of *Colorado River* doctrine to declaratory judgment actions, a proposition carefully examined and rejected by the Court of Appeals.

First, the complaint makes no reference to 28 U.S.C. § 2201 and makes no request for any declaration of any kind by the Court. Second, the complaint does allege various types of damage, albeit without reciting an *ad damnum*, and prays for judgment including prejudgment interest. Defendant's main argument here is that plaintiffs' failure to state a more specific claim converts the complaint to one for declaratory judgment.[17] We disagree.

*Plaintiffs' opposition.* Having focused on the issue of § 632 jurisdiction, plaintiffs coasted in response to the points raised by the defendant under the *Colorado River* doctrine, relying almost exclusively on the strong presumption in favor of retaining federal jurisdiction and a general denial of exceptional circumstances warranting abstention. Nowhere in their opposing memorandum[18] did plaintiffs even address, let alone rebut, the defendants' submissions, discussed *ante*, regarding the order of filing and relative progress of the parallel cases, the motivation factors, the additional *Moses Cone* factors and the constructive declaratory judgment claim. Plaintiffs did acknowledge the *Colorado River* doctrine and did discuss avoidance of piecemeal litigation; however, they relied mainly on *Rojas–Hernandez v. Puerto Rico Electric Power Authority*, 925 F.2d 492 (1st Cir. 1991), a case readily distinguishable from this one on several grounds.[19]

*Balancing of important factors.* The combination of so many factors favoring surrender of jurisdiction in this case, and so few supporting retention, is at least exceptional, perhaps unique, and compels allowance of the defendant's motion. The dominant goal of "comprehensive disposition of litigation," *Colorado River, supra* at 817, 96 S.Ct. at 1246, can be achieved only in the Superior Court which alone has before it all the parties in interest and all their competing claims. Duplication in the instant case of but a segment of the earlier Commonwealth litigation—earlier by a year and nearly ready for trial—would, in our view, delay rather than expedite ultimate resolution of the controversy, and complicate it unnecessarily and with likely prejudice to parties present there but absent here. The several ancillary factors analyzed *ante* under the heading "Motivation factors" strongly support surrender of jurisdiction and overcome the bare, however powerful, presumption of its retention on which plaintiffs must rely. Indeed, the balance favoring abstention is so uneven, in our opinion, that the following observation by Judge Hubert L. Will in *Lumen Construction, Inc. v. Brant Construction Co., Inc.*, 780 F.2d 691, 694 (7th Cir.1986), deserves consideration:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications. *Cf.* R. Pound, *The Causes of Popular Dissatisfaction with the Administration of Justice* (Address of Aug. 29, 1906 to the American Bar Association), *reprinted in* 35 F.R.D. 273 (1964).

Far from viewing the *Colorado River—Moses Cone* test as a "mechanical checklist", 460 U.S. at 16, 103 S.Ct. at 937, we recognize institutional concerns as being

---

**17.** At oral argument, plaintiffs conceded the vagueness of their prayer for judgment and requested leave to amend, a request mooted by the Court's eventual allowance of defendant's pending motion.

**18.** Oral argument on defendant's motion did not enlarge or refine substantially the parties positions set forth in their memoranda.

**19.** E.g., the parallel actions were in tort arising out of personal injuries to an eleven-year-old boy, the Commonwealth suit brought by his mother and the federal suit by his father; both complaints were filed on the same day, the witnesses to be presented in the two suits were the same; the suits had proceeded at roughly the same pace; and, most importantly, exceptional circumstances favoring surrender of federal jurisdiction were absent except for the possibility of piecemeal adjudication which did "not create significant potential for prejudice". Id. at 497.

**1286**

part of the careful balancing of important factors mandated by the Supreme Court.

*Dismissal versus stay.* "[W]hether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel state-court suit," *Moses H. Cone Hospital, supra,* at 28, 103 S.Ct. at 943, has not been decided by the Supreme Court. In *Moses Cone,* the plaintiff Hospital's contention "that a stay is less onerous than a dismissal" was rejected with the comment that its "argument fails to make out any genuine difference between a stay and a dismissal." Id. at 28, 103 S.Ct. at 943. In at least one circuit, a stay rather than a dismissal without prejudice has been held to be "the appropriate procedural mechanism for a district court to employ." *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1290 (7th Cir.1988); *Lumen Construction, Inc. v. Brant Construction Co., Inc., supra* at 697–698. But the Court of Appeals for this circuit has not so ruled. Moreover, the following reasons given for the Seventh Circuit rule are for the most part inapplicable to the instant litigation:

> A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits. *Bosworth,* 713 F.2d at 1322; *Evans Transp. Co. v. Scullin Steel Co.,* 693 F.2d 715, 717–18 (7th Cir.1982). A stay, by contrast, permits the federal court to retain jurisdiction in case the state court action does not meet its anticipated end. A stay has the additional advantage of bringing the case back before the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions.

*See also Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 570 n. 21, 103 S.Ct. 3201, 3215 n. 21, 77 L.Ed.2d 837 (1983) which gives as an example of a need to return to the federal court "a decision by a state court that it does not have jurisdiction over some or all of these claims after all".

There is no prospect in this case of any such decision by a court of the Commonwealth of Puerto Rico. Finally, plaintiffs have not argued that the circumstances of this case make a stay preferable to dismissal.

## CONCLUSION

Federal jurisdiction may properly be declined, rather than stayed, after full consideration of all relevant *Colorado River* factors. Dismissal in deference to an earlier Commonwealth action was affirmed in *Villa Marina II, supra,* on grounds we believe to have been less compelling than those here presented, especially in the areas of order of jurisdiction, motivation and avoidance of piecemeal litigation. For this reason and those stated *ante* under the heading "Balancing of important factors," it is ordered that the defendant's motion to dismiss be granted and that a judgment of dismissal without prejudice [20] be entered.

---

**20.** The judgment here should have no preclusive effect in the Superior Court action.