TELECREDIT SERVICE
CENTER, Plaintiff,

v.

FIRST NATIONAL BANK OF THE
FLORIDA KEYS, Defendant.

No. 88–10013–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 22, 1988.

Herbert Stettin, Miami, Fla., for plaintiff.

Frank Scruggs, Miami, Fla., for defendant.

ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND

JAMES LAWRENCE KING, Chief Judge.

THIS CAUSE arises before the court upon plaintiff Telecredit Service Center,

Inc.'s ("Telecredit") motion to remand this action. Plaintiff commenced this action in the Sixteenth Judicial Circuit of Monroe County, Florida. The defendant, First National Bank of the Florida Keys, ("First National") timely removed this action to this court alleging jurisdiction under 28 U.S.C. § 1331 (federal question) and 12 U.S.C. § 632 (international and foreign banking). For "reasons more historic than logical,"[1] this court must grant Telecredit's motion and remand this action.

## I. BACKGROUND

Telecredit brings this action against First National based on a contract between the two parties, seeking a declaratory judgment and damages in which plaintiff alleges fraud and misrepresentation. First National denied all charges of wrongdoing in its answer and counterclaimed against plaintiff, alleging fraud, breach of fiduciary duty, conversion, breach of implied duty of good faith and raised defenses predicated upon federal banking laws.

Telecredit is in the business of servicing Visa and Master Card sales transactions involving financial institutions and merchant depositers. First National and Telecredit entered into a contractual agreement in November of 1983, whereby Telecredit would provide First National, inter alia, with technical assistance and act as a go-between for transactions between Visa and Master Card, the merchants, and the defendant bank. For its services Telecredit receives a set fee for every Master and Visa credit card transaction it clears.

The plaintiff alleges that the defendant established business relationships with two merchant depositors, Central Keys Realty Management, Inc. ("Central Keys") and Marathon Marine Specialties, ("Marathon"). The bank allegedly accepted for deposit almost two million dollars in credit card invoices from Central Keys and over one hundred thousand dollars from Marathon. There was an exceptionally high percentage of "chargebacks," on the two depositor merchant's submitted sales drafts,

totaling more than $639,000 from both companies between February and July of 1987. Chargebacks are those charges that the card holder's issuing bank declines to pay at the insistence of the card holder, who claims that the charges were not of her doing. First National, in its counterclaim, alleges that Telecredit wrongfully charged the defendant bank for the chargebacks.

■ The defendant, First National, filed its verified petition for removal based on federal question jurisdiction, 28 U.S.C. § 1331, and a unique removal banking statute, 12 U.S.C. § 632, which confers on federal district courts original jurisdiction to adjudicate all cases involving "suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking." *Id.* When a defendant seeks to remove a case, this court can only hear the case if Congress has conferred by statute jurisdiction on this court. In this case the well known adage rings true: "Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie Des Bauxites*, 456 U.S. 694, 701, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *See generally* 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3522.

## II. DISCUSSION

A. *Jurisdiction under 12 U.S.C. § 632*

■ Before determining if removal is proper under the traditional analytic framework of 28 U.S.C. § 1441, et seq., *see infra* Part II(B), the court first looks to section 632 of Title 12, known as the Edge Act ("Act"), Act of June 16, 1933, c. 89, § 15, 48 Stat. 184, amending, 25(b), to the act of Dec. 23, 1913, c. 6. If jurisdiction is proper under the Act, the court could rest here, knowing that it had the necessary jurisdiction to adjudicate this action.

The defendant asserts that jurisdiction is proper under the Act because the transactions in question involve international fi-

---

**1.** Paraphrasing Justice Brennan's well known line in *Franchise Tax Bd. v. Constr. Laborers*

*Vacation Trust,* 463 U.S. 1, 4, 103 S.Ct. 2841, 2843, 77 L.Ed.2d 420 (1983).

nancial operations. Specifically, First National alleges that the supposed fraud involved the sale of travel club memberships in Elbow Cay Club of Abaco, Bahamas, a foreign jurisdiction. The defendant argues that Visa and Master Card transactions involve billions of dollars throughout this nation and abroad. Defendant asserts that these transactions are subject to a variety of internal (Visa and Mastercard) and federal regulations and that this court's resolution of the chargeback issue is one of first impression likely to have national and international significance. As such, the defendant's argument continues, this court of the federal system should adjudicate the action, rather than the state court.

The court begins with the well recognized proposition that removal statutes should be strictly construed with all doubts being resolved against the removing party. *See* 14A Wright, Miller & Cooper, Federal Practice and Procedure, § 3721. In the instant case the court agrees with the First District Court of Appeals when it opined: "we are unable to believe that Congress intended to reach all cases in which a bank is a party. If Congress so intended, it could have stated its intent more easily." *Diaz v. Pan American Federal Savings and Loans Ass'n.*, 635 F.2d 30, 32 (1st Cir.1980).

Courts have interpreted the Act narrowly to encompass only those transactions characterized as traditional banking activities, such as transactions involving mortgage foreclosures, letters of credit, letters of guaranty when the bank relied on the letter in granting a loan, and transactions involving Federal Reserve Banks. *De Rosa v. Chicago Title Ins. Co.*, 690 F.2d 1, 4 (1st Cir.1982) (citing cases); *Jones v. Federal Reserve Bank of Kansas City*, 92 F.R.D. 354 (W.D.Okla.1981) (standing for the proposition that Federal Reserve Banks fall within the Act). *See also De Rosa v. Chicago Title Ins. Co.*, 681 F.2d 66, 68 (1st Cir.1982). The focus of the court's inquiry must be whether "the transaction in question be one 'arising out of . . . international or foreign banking.'" *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 791–92 (2d Cir.1980),

*cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981) (quoting 12 U.S.C. § 632) (hereinafter *"Vintero* III")).

In *Vintero* III the Second Circuit found jurisdiction present under the Act, in a complex transaction involving the sale of a Venezuelan corporation's notes. The *Vintero* III court rejected the district court's reasoning where the lower court found jurisdiction existed on the mere presence of two federally charted banks. The Second Circuit held that the crux of whether the Act conferred jurisdiction on a court was a question that must be answered by looking to the nature of the transaction. *Id.* at 792 (rejecting the district court's reasoning in *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 477 F.Supp. 615 (S.D.N.Y.1979) (hereinafter *Vintero* II). The *Vintero* III court, analyzing the nature of the transaction, wrote: "The 'international' or 'foreign' part of the sale of Cariven's notes was, in essence, a private placement with a financing firm, but not really a banking transaction because neither Cariven nor Merban, nor for that matter CVF, is a bank." *Vintero* III, 629 F.2d at 792. The court went on to find federal jurisdiction based on the Edge Act where one of the banks involved, previously characterized as a mere stakeholder by the district court, was recharacterized as a bank involved in international banking transactions because that bank [SPIB], was alleged to have wrongfully issued downdraws on a letter of credit. *Id.* The traditional banking activity conferring jurisdiction under the statute, was the wrongful downdraws on the letter of credit, not the original financing arrangements.

In the instant case this court must determine the true nature of the transaction at issue. The defendant asserts that this case in particular involves sales of travel club memberships in the Bahamas. First National reasons that the operating regulations, which are incorporated by reference into the contract, govern " 'member bank' and 'service center' processing of international credit card sales, such as the sales of travel memberships involved in this case." Defendant's Verified Petition for Removal.

This court finds defendant's petition too tenuous to constitute a traditional banking transaction as contemplated by Congress in 12 U.S.C. § 632. Rather, the court views the nature of the transaction at issue, i.e., the allocation of risk with respect to fraudulent chargebacks, as a contractual dispute between the parties.

The transaction involving the alleged fraud was between First National, the two allegedly fraudulent corporations, Visa and Master Card, Telecredit, and a number of consumers and their respective issuing banks. As in *Vintero* III, the parties to the original transaction, i.e., the consumer and the allegedly fraudulent corporations, were not banks. The potential liability does not stem from the supposed foreign aspect of the transaction, but from the alleged fraud of the domestic corporations. One could hardly say that the nature of the transaction was a transaction involving international banking merely because the service being purchased was to be consumed in a foreign land.

Following the defendant's reasoning would lead this court to find jurisdiction in every chargeback dispute involving a foreign product or service, consumed in the United States by an American consumer, sold by an American corporation, simply because the consumer purchased the product or service with her credit card. The defendant's position would have this court go even further, in that presumably the two fraudulent corporations were domestic corporations selling a product domestically to American consumers, but which would be, in part, consumed outside of the United States. Defendant's reasoning implies that this court would have to apply a "service/product" distinction and a "foreign/domestic" consumer distinction in transactions involving credit cards. The court finds this argument stretches the statute well beyond what Congress intended, and well beyond what has been considered a traditional banking activity.

The true nature of this action is contractual. The question to be resolved is which party is going to bear the loss occasioned by the apparent fraud. Each side claims that the other is liable for the chargebacks. In order to make that determination a court will have to look at the intention of the parties, unless, as the defendant suggests, federal law will preempt the controlling state law. The question of preemption, if applicable, however, does not confer original jurisdiction on this court. *See infra* Part II(B); *see generally* 1A Moore's Federal Practice, paragraph 0.160[4]. When Congress chooses to deviate from the well established rules regarding its creation of federal district court jurisdiction, *see* U.S. Const. Art. III, it knows how to achieve that ends. *See e.g.* 12 U.S.C. § 632, paragraph 2 (specifically granting any Federal Reserve Bank the right to remove); 12 U.S.C. § 1819(4) (granting FDIC right to remove when it is a party); 9 U.S.C. § 205 (suits involving awards and agreements falling under the Convention of the Recognition and Enforcement of Foreign Arbital Awards of June 10, 1958); 28 U.S.C. §§ 1442–1445 (federal officers, members of armed forces, civil rights cases, and foreclosure actions against the United States, can all be removed to federal district courts); *see generally* 14A Wright, Miller & Cooper, Federal Practice and Procedure §§ 3727–3729.

### B. Federal Question Jurisdiction

Determining that jurisdiction will not lie upon the Edge Act, 12 U.S.C. § 632, the court now turns its attention to the defendant's jurisdictional claim based on federal question jurisdiction. 28 U.S.C. § 1441. Section 1441 of Title 28 allows a defendant to timely remove her pending state court action to the federal district court, if the federal district court would have had original jurisdiction. *Id.* Original jurisdiction can be based on diversity jurisdiction, 28 U.S.C. § 1441(a) (same requirements as 28 U.S.C. § 1332), or, as the defendant's allege in the instant case, "a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b) (same requirements as 28 U.S.C. § 1331). If removal appears improper, the district court, at any time before final judgment, shall remand the action to the state court. 28 U.S.C. § 1447(c).

This court must determine if the defendant's removal petition meets the "arising under" test that the Supreme Court of the United States and the lower federal courts have developed since Congress enacted the removal statute in 1875. Act of Mar. 3, 1875, ch. 137, section 1, 18 Stat. 470. The defendant alleges that federal jurisdiction is predicated upon and "arises under" federal law, in that plaintiff's request for a declaratory judgment presents questions of first impression with respect to uncollected chargebacks, and that the resolution of this question is of national import, affecting a substantial amount of money both domestically and abroad. Defendant contends that the regulations of Visa and Master Card form a basis of the underlying agreement between the parties and that this court, being a court of the federal system, should be the court to adjudicate and declare the rights between the parties on a matter which will most likely have a national and international impact on the banking industry. Defendant implies that federal law governs these Visa and Master Card operating regulations. Even assuming that defendant's assertions are correct, the court is compelled to remand this action based on the "well-pleaded complaint rule." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *McDougald v. Jenson*, 786 F.2d 1465, 1476 (11th Cir.1986).

■ The well-pleaded complaint rule requires a federal court to read the plaintiff's complaint as the plaintiff presents her claim to the court, without anticipating either potential federal defenses or federal law preempting the plaintiff's state claim. The claim "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which is thought the defendant may interpose." *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)). In order for this court to have original jurisdiction under 28 U.S.C. § 1441(b) the federal "right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd.*, 463 U.S. at 10–11, 103 S.Ct. at 2847, (quoting *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). Where the plaintiff's claim is a wholly contained state cause of action, but supported by underlying federal statutory or Constitutional law, then the well-pleaded complaint rule precludes federal jurisdiction.[2] Likewise, a federal defense which preempts state law is not sufficient to confer jurisdiction, even if irony has the federal law becoming the controlling law in the case. *See* 1A Moore's Federal Practice paragraph 0.160[4].[3] The court now focus-

---

**2.** Justice Cardozo, writing for the Court in *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936), gives an insightful hypothetical example of the application of the well-pleaded complaint rule. He asks the reader to suppose that federal law or a Constitutional amendment was enacted which made it legal for states to impose taxes on income derived from federal securities or to suppose states could impose imposts and duties on imports and exports. If the state were to sue for the recovery of such taxes, the suit would not be one arising under federal law or under the Constitution, "though in the absence of the amendment the duty or the tax would fail." *Id.* at 116, 57 S.Ct. at 99.

**3.** This remains so even if, had the defendant been the party to bring the action to the federal court in the first place, federal jurisdiction would have been conferred on this court. In effect, plaintiff can manipulate the action

through her complaint to choose a state or federal forum if there is a choice between the two. *Great Northern Ry. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 240, 62 L.Ed. 713 (1918); *See generally* 1A Moore's Federal Practice paragraph 0.160[3.–3].

The focus on technical rules of pleadings would at first blush appear to be inconsistent with the spirit of the Federal Rules of Civil Procedure, which promote a more liberal, less technical standard for pleadings. The inconsistency can be resolved if one keeps in mind that the heart of the well-pleaded complaint rule goes to the Court's respect for not expanding federal district court jurisdiction without a clear Congressional mandate. The rule also has the practical effect of limiting a federal district court's jurisdiction to prevent:

"a vast current of litigation indubitably arising under State law, in the sense that the right to be vindicated was State-created, if a suit for

es its attention to the four corners of plaintiff Telecredit's complaint in light of the well-pleaded complaint rule. The complaint is based on two grounds for relief. The first ground asks the court to declare the rights and duties between the parties, and ultimately to declare that First National is liable for the chargebacks. Count II is a claim for fraud and misrepresentation and seeks compensatory and punitive damages.[4] Like the plaintiff in *Franchise Tax Bd.*, nowhere in plaintiff's complaint is Florida or federal law expressly invoked.[5]

The Supreme Court has struggled with the proper manner in which to interpret the well-pleaded complaint rule with respect to federal and state declaratory judgment actions and has resolved the issue in a common-sense fashion. The problem results from the fact that declaratory judgment claims by their nature often involve an anticipated federal defense on the face of the complaint. This was the issue in *Skelly Oil* where the plaintiff sought a federal declaratory judgment asking the court to declare a contract in effect and binding on all parties involved. The contract hinged upon the pipeline company, Michigan–Wisconsin, being able to obtain a certificate of public convenience from the Federal Power Commission, as required under federal law. Naturally, the federal certificate of convenience became an anticipated defense, which the trial court would have had to take into account in declaring the rights and duties between the parties. The Court rejected the notion that the federal declaratory judgment Act was meant to enlarge the jurisdictional bailiwick of the federal district courts merely because the federal claim "would be injected into the case only

in anticipation of a defense to be asserted by petitioners." *Skelly Oil*, 339 U.S. at 672, 70 S.Ct. at 879; *Accord Franchise Tax Bd.*, 463 U.S. at 16–19, 103 S.Ct. at 2849–51. The *Franchise Tax Bd.* Court extended the reasoning of *Skelly Oil* to state declaratory judgment claims.

This court must follow the Court's common-sense approach to determine if plaintiff's claim is predicated upon state or federal law. As Justice Cardozo so aptly stated: "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation … a selective process which picks the substantial causes out of the web and lays the other ones aside." *Gully*, 299 U.S. at 117–118, 57 S.Ct. at 100 (quoted by the Court in *Franchise Tax Bd.*, 463 U.S. at 20–21, 103 S.Ct. at 2852).

"Picking the substantial causes out of the web," this court concludes that plaintiff's complaint is predicated upon state law. This court must assume that a plaintiff who files a complaint in state court without alleging any foreign or federal law, submits himself to the laws of the state where filed. *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848. Plaintiff Telecredit alleges that it is entitled to a declaratory judgment determining that the defendant is responsible for all processed credit card invoices of the defendant involving Central Keys and Marathon. The court views this claim as a claim for the enforcement of a state contract action. The basic question that the plaintiff's claim presents is which of these two parties, based on the agreement between the two, should bear the loss arising out of the alleged credit

---

a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law. Not only would this unduly swell the volume of litigation in the District Courts but it would also embarrass those courts-and this Court on potential review-in that matters of local law may often be involved, and the District Courts may either have to decide doubtful questions of State law or hold cases pending disposition of such State issues by State courts."
*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, at 673, 70 S.Ct. 876, at 880, 94 L.Ed. 1194 (1950).

**4.** The court need not reach at this juncture the arguments defendant raises in its motion to dismiss, which attacks the sufficiency of plaintiff's claim for relief in Count II. The court must first determine if subject-matter jurisdiction exists, and if not, that matter can be addressed to the state court.

**5.** The attached agreement, however, does state that the agreement shall be governed and construed in accordance with Florida law.

card fraud. Whether that issue is eventually determined on the basis of federal law, is of no concern to this court with respect to determining the initial question of jurisdiction. This court is not at liberty to devine what federal issue "is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so far removed from plain necessity, is unavailable to extinguish the jurisdiction of the states." *Gully*, 299 U.S. 117, 57 S.Ct. at 100.

Accordingly, after a careful review of the record, and the Court otherwise being fully advised, it is

ORDERED and ADJUDGED that plaintiff's motion to remand this action be, and the same is hereby, GRANTED.