# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1130

_____

Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.;
Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C.; Ritchie Capital
Management, SEZC, Ltd.

*Plaintiffs - Appellants*

v.

JP Morgan Chase & Co.; JP Morgan Chase Bank, N.A.

*Defendants - Appellees*

J.P. Morgan Private Bank

*Defendant*

Wells Fargo & Co., as successor by merger to Wachovia Capital Finance (Central);
Wells Fargo Bank N.A.; Wachovia Capital Finance Corporation (Central); UBS
Loan Finance, L.L.C.; UBS AG; UBS AG Stamford Branch; Merrill Lynch
Business Financial Services, Inc.; Lasalle Business Credit, L.L.C.; Bank of America
Business Capital; Bank of America Corporation; The CIT Group Inc.; The CIT
Group/Business Credit, Inc.; PNC Bank, N.A.; Fifth Third Bank; Webster Business
Credit Corporation; Associated Commercial Finance, Inc.; Chase Lincoln First
Commercial Corporation; Richter Consulting, Inc.; J.P. Morgan Europe Ltd.

*Defendants - Appellees*

Douglas A. Kelley, Trustee of the PCI Liquidating Trust; Randall L. Seaver, Trustee of Petters Capital, LLC; John R. Stoebner, Trustee of Polaroid Corp, et al.

*Intervenors Below - Appellees*

————————

Appeal from United States District Court
for the District of Minnesota

————————

Submitted: November 12, 2019
Filed: June 3, 2020

————————

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

————————

GRASZ, Circuit Judge.

The appellants — Ritchie Capital Management, L.L.C., Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., Yorkville Investment I L.L.C., and Ritchie Capital Management, SEZC, Ltd. (collectively, the "Ritchie entities") — sued a collection of mostly banking institutions from which the Ritchie entities sought to recover millions of dollars they loaned Tom Petters, a convicted fraudster, and two of his companies. According to the Ritchie entities, the defendants helped conceal the fraud so that *they* could recover millions they had tied up with Petters's companies. The Ritchie lawsuit meandered through various courts before the district court dismissed the claims as time-barred under Fed. R. Civ. P. 12(b)(6). On appeal, the Ritchie entities launch numerous attacks on the district court's opinion. While most fall short, we agree that dismissing the claims brought by three Ritchie entities was premature. We therefore reverse in part.

-2-

# I. Background

We are called once again to weigh in on a case involving the multibillion dollar Ponzi scheme perpetrated by Tom Petters, a Minnesota businessman. *See United States v. Petters*, 663 F.3d 375, 379 (8th Cir. 2011) (describing Petters's criminal scheme).[1]  Petters owned and/or controlled numerous businesses, including Petters Company, Inc. ("PCI"); Petters Group Worldwide, LLC ("PGW"); and Polaroid Corporation ("Polaroid Corp."). *Id.* at 379.  Petters used PCI as the primary vehicle through which he swindled investors with empty promises of buying electronics and selling them to big-box stores at a profit.  In 2008, government officials investigated and arrested Petters.  A federal jury ultimately convicted him of twenty crimes, including wire fraud, mail fraud, and money laundering.

In January of 2008, before Petters was arrested and his Ponzi scheme fell apart, he sought out Thane Ritchie and solicited loans from the Ritchie entities.  Between February 1 and May 9, the Ritchie entities loaned Petters, PCI, and PGW approximately $189 million.  Most of these loans — ten loans for roughly $146 million — were made to Petters and PGW in February 2008.  Two loans totaling $31 million were made to Petters and PCI in March 2008.  And two final loans totaling $12 million were made to Petters, PGW, and PCI in May 2008.  The Ritchie entities only recovered a small fraction of the amount loaned and claim they suffered damages in excess of $150 million.

In this lawsuit, the Ritchie entities seek to recover their damages from various entities, which can be separated into the following four groups: (1) JP Morgan Chase

---

[1]We have decided numerous appeals involving the Ritchie entities' loans to Petters. *See Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 858 (8th Cir. 2015); *Ritchie Capital Mgmt., LLC v. Jeffries*, 653 F.3d 755, 757 (8th Cir. 2011); *Ritchie Special Credit Invs., Ltd. v. U.S. Tr.*, 620 F.3d 847, 850 (8th Cir. 2010).

& Co. and JP Morgan Chase Bank, N.A. (collectively, "JP Morgan"); (2) JP Morgan Europe Ltd. ("JP Morgan Europe"); (3) a collection of banks and lending institutions[2] (collectively, the "Syndicate Lenders"); and (4) Richter Consulting, Inc. ("Richter Consulting"). Greatly summarized, the Ritchie entities allege the defendants, led by JP Morgan, were aware of Petters's Ponzi scheme, but for their own financial benefit wrongfully allowed and encouraged the Ritchie entities to loan money to PCI.

Although the details of the Ritchie entities' theory of the case are not necessary to resolve this appeal, a basic understanding of the theory is helpful. In July 2004, JP Morgan became the indirect, majority owner of Polaroid Corp. PCI had a license agreement that allowed it to use Polaroid's brand name on electronic equipment. After PCI fell behind in its royalty payments and went into default, JP Morgan purportedly used this leverage to force PCI to purchase Polaroid Corp. In April 2005, through a series of complex deals, PGW became the owner of Polaroid Holding Company, which in turn owned Polaroid Corp. JP Morgan loaned $125 million to the Polaroid companies as a term loan, and the Syndicate Lenders loaned $250 million to the Polaroid companies as a revolving-credit agreement. JP Morgan served as the administrative agent for the U.S.-based Syndicate Lenders and JP Morgan Europe served in the same role for the Europe-based Syndicate Lenders.

Pursuant to its loan agreements, the Polaroid companies were required to provide audited financial statements to JP Morgan. Although the Polaroid companies failed to provide such statements, JP Morgan initially did not strictly enforce the requirement. This changed, however, in 2007, when JP Morgan declared a default and forced

---

[2]Wells Fargo & Co.; Wells Fargo Bank, N.A.; UBS Loans Finance, L.L.C.; UBS AG and its Stamford Branch; Merrill Lynch Business Financial Services, Inc.; LaSalle Business Credit, L.L.C.; Bank of America Business Capital; Bank of America Corporation; The CIT Group Inc.; The CIT Group/Business Credit, Inc.; PNC Bank N.A.; Fifth Third Bank; Webster Business Credit Corporation; Associated Commercial Finance, Inc.; and Chase Lincoln First Commercial.

Polaroid Corp. and related companies to hire Richter Consulting as a consultant, which would make reports to JP Morgan about Polaroid Corp.'s financial situation. The Ritchie entities allege that JP Morgan definitively learned in January 2008 that Petters was perpetrating a fraudulent-transfer scheme. Worried Petters would get caught and become unable to repay the money owed to the Syndicate Lenders and itself, JP Morgan demanded immediate payment.

This allegedly caused Petters to seek out Thane Ritchie and criminally defraud the Ritchie entities into loaning money in order to pay back JP Morgan and the Syndicate Lenders. The Ritchie entities allege JP Morgan and Richter Consulting enabled Petters to facilitate this fraud. For example, the Ritchie entities claim Richter Consulting and JP Morgan knew that due diligence materials sent to the Ritchie entities were inaccurate. The Ritchie entities also claim Petters, again with the knowledge of JP Morgan, then laundered the proceeds of these loans through circuitous international accounts, including JP Morgan Europe's London branch, in order to obscure the source of the funds. Petters thereby satisfied the debts owed to JP Morgan and the Syndicate Lenders with the money lent by the Ritchie entities.

After the Ponzi scheme collapsed and Petters was indicted, a number of his companies declared bankruptcy, including Polaroid Corp., PCI, and Petters Capital, LLC. Trustees were appointed to administer these estates (the "Trustees.").

In January 2014, the Ritchie entities brought suit against all of the defendants except JP Morgan Europe in the New York Supreme Court for the County of New York, New York.

A subset of the defendants removed the matter to the United States District Court for the Southern District of New York. The Ritchie entities moved to remand the case to state court, arguing the federal court lacked jurisdiction. In November 2014, the

district court denied the Ritchie entities' motion to remand, reasoning it had jurisdiction under the Edge Act, 12 U.S.C. § 632, and as a civil case related to Chapter 11 bankruptcy proceeding under 28 U.S.C. § 1334(b).  Recognizing that the bankruptcy proceedings related to this action were in the District of Minnesota, the district court transferred the case there.

The United States District Court for the District of Minnesota referred the case to the bankruptcy court and permitted the Trustees to intervene.  The Ritchie entities eventually filed a second amended complaint, asserting twenty-two causes of action against the various defendants, including aiding and abetting fraud, aiding and abetting wrongful diversion of funds, aiding and abetting conversion, commercial bad faith, aiding and abetting breach of fiduciary duties, negligence, breach of fiduciary duty, unjust enrichment, and knowing and constructive fraudulent conveyance.

The defendants filed motions to dismiss the second amended complaint.  The bankruptcy court issued a report and recommendations ("R&R"), recommending abstention regarding some claims, finding the Ritchie entities lacked standing to assert their fraudulent transfer claims, and finding subject matter jurisdiction was lacking over other claims.  The parties objected to different aspects of the R&R.  After a hearing, the district court held all of the claims were untimely and that it lacked personal jurisdiction over JP Morgan Europe.  The Ritchie entities filed a timely notice of appeal.

## II.  Analysis

On appeal, the Ritchie entities argue the district court lacked subject matter jurisdiction and therefore its judgment must be reversed and the case dismissed and remanded to the state court.  The Ritchie entities also contend the district court was wrong to find their claims untimely.  And even if the district court was correct to decide

the claims were untimely as pled, the Ritchie entities argue the district court should have permitted them to again amend their complaint instead of dismissing the claims. They also urge us to reverse the district court's conclusion that it lacked personal jurisdiction over JP Morgan Europe. We address each argument in turn.

## A. Subject Matter Jurisdiction

We first consider whether federal subject matter jurisdiction exists, which we review de novo. *See Cascades Dev. of Minn., LLC v. Nat'l Speciality Ins.,* 675 F.3d 1095, 1098 (8th Cir. 2012). If original jurisdiction was lacking at the time of removal, then remand to state court is necessary. *See id.*

The district court — at that time the United States District Court for the Southern District of New York — found subject matter jurisdiction for two reasons. First, it concluded jurisdiction was present under the Edge Act, 12 U.S.C. § 632, reasoning the claims arose out of transactions involving international or foreign banking. The district court also determined subject matter jurisdiction existed under 28 U.S.C. § 1334(b) because the claims were related to bankruptcy jurisdiction. If the district court was correct regarding either theory, then the Ritchie entities' challenge to subject matter jurisdiction fails.

We conclude the district court was correct in finding jurisdiction under the Edge Act. The statute relevantly states:

> [A]ll suits of a civil nature . . . to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, . . . or out of other international or foreign financial operations, . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such

-7-

suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United
 States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632.

Under the language of the statute, three elements must be met to establish jurisdiction: (1) this must be a civil suit; (2) one of the parties to the suit must be a corporation organized under the laws of the United States; and (3) the suit must arise out of a transaction involving international or foreign banking (or international financial operations). 12 U.S.C. § 632; *see also Sollitt v. KeyCorp*, 463 F. App'x 471, 473 (6th Cir. 2012) (recognizing that the few courts which have interpreted the Edge Act consistently have understood § 632 to include these three general elements).

Only the third element is in dispute — whether the civil suit arose out of a transaction involving international or foreign banking. The Ritchie entities' argument that this element is not satisfied depends on two propositions. The first is that original jurisdiction only exists where the suit arose from offshore banking or other foreign financial transactions *of* the nationally-chartered bank that is party to the action. *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 784 (2d Cir. 2013) (explaining that "in order for [the Edge Act's] grant of federal jurisdiction and removability to apply, the suit must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction of that federally charted corporation"). The second proposition is that the Edge Act does not confer subject matter jurisdiction over suits with only attenuated connections to international banking. *See Telecredit Serv. Ctr. v. First Nat'l Bank of the Fla. Keys*, 679 F. Supp. 1101, 1103–04 (S.D. Fla. 1988) (explaining that courts have interpreted the Edge Act "narrowly to encompass only those transactions characterized as traditional banking activities, such as transactions involving mortgage foreclosures,

letters of credit, letters of guaranty when the bank relied on the letter in granting a loan, and transactions involving Federal Reserve Banks").

Even if we accept these propositions, the Ritchie entities' argument fails. Their Second Amended Complaint alleges foreign banking transactions occurred involving JP Morgan, a federally chartered bank, that are substantial and central to the Ritchie entities' case against JP Morgan. Straight away, in the first paragraph of their Second Amended Complaint, the Ritchie entities alleged, "Petters sought out Thane Ritchie, criminally defrauded him and his companies, then laundered the proceeds of the Ritchie loans through a circuitous international chain of bank accounts, including at JP Morgan's London affiliate, to obscure the source of funds, and used the money to further his frauds." Later, in paragraphs 122 and 123, the Ritchie entities detail JP Morgan's dealings with Petters to structure transactions — foreign and domestic — in violation of banking and tax-reporting obligations and ultimately to use foreign accounts to "launder about $43 million from the proceeds of Ritchie's loans to Petters."

Courts continue to debate how broadly the Edge Act's grant of federal jurisdiction sweeps. *Sollitt*, 463 F. App'x at 473–74 (discussing competing views on how broadly to interpret Edge Act jurisdiction). But whether we view Edge Act jurisdiction restrictively or expansively, the allegations here suffice. The Ritchie entities alleged foreign banking transactions involving JP Morgan as a core part of their claims of wrongdoing. We therefore conclude the district court had subject matter jurisdiction under the Edge Act, and we need not decide whether the district court also had subject matter jurisdiction under 28 U.S.C. § 1334(b).

## B. Dismissal Based on the Statute of Limitations

We now turn to the district court's dismissal of the Ritchie entities' claims under Fed. R. Civ. P. 12(b)(6). The district court found the claims were brought after Illinois's five-year statute of limitations expired. *See* 735 Ill. Comp. Stat. 5/13-205.

The district court began its analysis by determining New York's choice-of-law principles applied because the case was transferred from New York. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (holding a transferee forum must "apply the law of the transferor court, regardless of who initiates the transfer"). Consequently, the district court applied New York's borrowing statute, N.Y. C.P.L.R. § 202.[3] The borrowing statute applies when a nonresident sues on a cause of action that accrues outside of New York. *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 103 N.E.3d 774, 777 (N.Y. 2008). When implicated, the statute requires filing within the limitations period of both the jurisdiction where the claim accrued and New York. *Id.* Concluding the Ritchie entities were all non-residents and the claims accrued in Illinois, the district court determined the relevant statute of limitations period on each claim was, at most, five years. The district court then interpreted Illinois law to conclude all of the claims were time barred because their injuries accrued between February and

---

[3]The statute provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202.

May 2008, but they did not file their complaint until April 2014, outside of the five-year time limit.

The Ritchie entities attack nearly every step of the district court's analysis. We address their arguments sequentially, reviewing the dismissal de novo and recognizing the general rule that a statute of limitations defense is only grounds for dismissal when the defense is established by the complaint itself. *See Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (providing the standard of review in reviewing a dismissal under Rule 12(b)(6)); *In re Dittmaier*, 806 F.3d 987, 989 (8th Cir. 2015) (standard of review for interpretations of state law); *St. Paul Fire & Marine Ins. Co. v. Bldg. Constr. Enters., Inc.*, 526 F.3d 1166, 1168 (8th Cir. 2008) (standard of review for choice-of-law determinations); *In re ADC Telecomms., Inc. Sec. Litig.*, 409 F.3d 974, 976 (8th Cir. 2005) (standard of review for statute-of-limitations determinations).

## 1. New York Choice of Law Principles

The Ritchie entities challenge the district court's decision to use New York choice-of-law principles. According to the Ritchie entities, because the Edge Act is the basis for federal court subject matter jurisdiction, federal choice-of-law principles must be used instead, and these principles dictate the choice-of-law principles from the state which has the greatest connection to the dispute should apply. They suggest, but do not directly argue on appeal, that Minnesota's law should apply.

We reject the Ritchie entities' argument for two reasons. First, the Ritchie entities did not directly advance this argument in their briefs before the district court. In fact, the *only* time another jurisdiction's choice-of-law rules were mentioned to the district court was during a hearing where counsel suggested the district court should use the limitations statute from Minnesota, as the state with the most contacts. But counsel never argued the district court should apply federal common law or provided any

authority suggesting such an approach be used. Considering this record, the Ritchie entities arguably waived their argument. *See Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (concluding an argument was waived when first raised on appeal).

Second, we are aware of only one circuit court decision where jurisdiction existed under the Edge Act and a party suggested federal common law choice-of-law principles should apply. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463–64 (D.C. Cir. 1995). There, our sister circuit rejected the argument and required the district court to apply the local forum's choice-of-law principles, as opposed to federal common law choice-of-law principles, because the action was based on substantive state law not addressed within the Edge Act. *Id.; see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 170 & n.5 (2d Cir. 2015) (applying New York choice-of-law principles in an Edge Act claim where no party objected). We see no reason to disagree with this approach, particularly in light of the Ritchie entities' failure to develop this argument. We conclude that in light of this record, the district court was correct to apply New York choice-of-law principles.

## 2. Residency of Ritchie Capital Management, L.L.C.

We next address whether the district court erred in concluding Ritchie Capital Management, L.L.C., was exclusively an Illinois resident for purposes of New York's borrowing statute. Recall the borrowing statute is only applicable to non-resident plaintiffs. The Ritchie entities contend Ritchie Capital Management, L.L.C., was both a resident of Illinois *and* New York, and therefore the New York borrowing statute is irrelevant.

"[T]he determination of whether a plaintiff is a New York resident, for purposes of CPLR 202, turns on whether he has a significant connection with some locality in the State as the result of living there for some length of time during the course of a

year." *Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 746 (N.Y. 1984). But doing business in New York at a New York office is not enough to make a company a New York resident, at least for purposes of the borrowing statute. *See Am. Lumbersmens Mut. Cas. Co. of Ill. v. Cochrane*, 129 N.Y.S.2d 489, 490–91 (N.Y. Sup. Ct. 1954) (holding the plaintiff, which was incorporated in Illinois, was not a resident of New York even though it legitimately did business in New York and had a New York office). Rather a business qualifies as a resident of New York if its *principal place of business* is in New York. *See Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 495 (S.D.N.Y. 2013) ("Under the New York borrowing statute, a business's principal place of business constitutes the sole residency of that business entity."); *Allegaert v. Warren*, 480 F. Supp. 817, 820 (S.D.N.Y. 1979) (holding a business incorporated in another state was a resident of New York for purposes of the borrowing statute when its principal place of business was in New York).

Thus, in order for Ritchie Capital Management, L.L.C, which was not organized in New York, to be a New York resident for purposes of the borrowing statute, it must ultimately show that its principal place of business is in New York. The Second Amended Complaint alleges the company "is a limited liability company with dual registration in Delaware and the Cayman Islands. At all relevant times, until 2015, Ritchie Capital Management had offices in Illinois and New York." These allegations fail to show the company's principal place of business was in New York.

We recognize that because the statute of limitations argument is an affirmative defense, a plaintiff typically does not need to plead all facts necessary to prove which state's statute of limitations applies. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 & n.10 (8th Cir. 2009) (explaining "a plaintiff need not plead facts responsive to an affirmative defense before it is raised"). But here, the district court was able to fill in the gap and eliminate the possibility that Ritchie Capital Management, L.L.C., was a New York resident by taking judicial notice of a previous court filing where the

-13-

company had represented that its principal office was in Illinois. *See Compl. at ¶ 12, Ritchie Capital Mgmt. L.L.C. v. Coleman*, No. 12-cv-00270 (D. Minn. Feb. 2, 2012), ECF No. 1. This was permissible. *See Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018) (explaining that when reviewing a motion to dismiss under Rule 12(b)(6), it is permissible to consider matters of public record). Further, despite being aware of this statute of limitations argument, the Ritchie entities never affirmatively asserted that the company's principal place of business was in New York. We therefore find no error in the district court's conclusion that Ritchie Capital Management, LLC, was not a New York resident for purposes of the borrowing statute, but instead was a resident of Illinois.

### 3. The Cayman entities

The Ritchie entities next argue the district court erred in its conclusion that Illinois's statute of limitations applied to three of the plaintiffs — Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., and Ritchie Capital Management SEZC, Ltd. (collectively, "the Cayman entities"). We agree with the Ritchie entities that this conclusion was premature because the pleadings do not definitively establish their claims accrued in Illinois.

"For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained rather than where the defendant committed the wrongful acts." *Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999). "When an injury is purely economic, the place of injury for purposes of the borrowing statute is where the economic impact of defendant's conduct is felt, which is usually the plaintiff's place of residence." *Id.* Under this rubric, New York courts have selected a foreign company's principal place of business over its place of incorporation for determining the place of accrual for purposes of the borrowing statute. *See Interventure 77 Hudson LLC v. Falcon Real Estate Inv. Co.*, 101 N.Y.S.3d 326 (N.Y.

-14-

App. Div. 2019) (explaining that "given [the] plaintiffs' injury was purely economic, the place of their injury for purposes of the borrowing statute is normally deemed their residence, where the economic impact of defendants' conduct is sustained"); *Brinckerhoff v. JAC Holding Corp.*, 692 N.Y.S.2d 381 (N.Y. App. Div. 1999) (choosing as the place of accrual the state where the out-of-state company had its principal place of business and where the monetary damages would be felt). New York courts have found dismissal inappropriate when courts cannot determine a business's principal place of residency for purposes of the borrowing statute because factual questions remain unresolved. *See Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 948 N.Y.S.2d 24 (N.Y. App. Div. 2012) (reversing a dismissal based on the statute of limitations because there was a factual dispute about the plaintiff's principal place of business at the time of the alleged breach). *Contra Verizon Directories Corp. v. Continuum Health Partners, Inc.*, No. 117782/05, 2009 WL 1116113 (N.Y. Sup. Ct. April 21, 2009) (affirming dismissal based on statute of limitations where, despite plaintiff's assertion of New York residency, plaintiff never alleged that its principal place of business was in New York and its allegations that it had extensive presence and was authorized to do business in New York were insufficient to establish residency), *aff'd*, 902 N.Y.S.2d 343 (N.Y. App. Div. 2010).

The district court decided the Cayman entities' claims accrued in Illinois because it concluded they resided in Illinois and suffered the economic injury there. In reaching that conclusion, the district court cited Cayman Islands Companies Law § 163, which requires so-called "exempt companies" to predominately conduct their business outside the Cayman Islands. So, the district court reasoned, the Cayman entities resided and suffered their injury in Illinois, where their manager, Ritchie Capital Management, L.L.C, was principally based. This conclusion was flawed.

The district court may have been generally correct that the Cayman entities, as exempted companies, could not predominately carry out their business within the

-15-

Cayman Islands. *See* Cayman Islands Companies Law § 163 (2018) ("Any proposed company applying for registration under this Law, the objects of which are to be carried out mainly outside the Islands, may apply to be registered as an exempt company."). But we are aware of nothing in Cayman law that prevents a Cayman exempt company from primarily suffering an injury's economic impact in the Cayman Islands. A Cayman exempt company could, for example, presumably keep its assets in the Cayman Islands. *See* Cayman Islands Companies Law § 174 (2018) ("[N]othing in this section shall be construed so as to prevent the exempted company effecting and concluding contracts in the Islands and exercising in the Islands all of its powers necessary for the carrying on of its business outside the Islands.") And if that were true, the company would plausibly have suffered its economic injury in the Cayman Islands, making that the location where the claim accrued for purposes of New York's borrowing statute. And such an injury could potentially lengthen the limitations period.

The district court's suspicion that the Cayman entities' claims accrued in Illinois may ultimately be correct. But for purposes of Rule 12(b)(6), we cannot conclude that this was established by the pleadings or other information properly before the district court.[4] Therefore, we must reverse the dismissal of the claims brought by the Cayman entities.

---

[4]The dissent contends we should take judicial notice that, in a federal court filing, the Ritchie entities stated their injury occurred in Illinois. *See Verified Compl.* at ¶ 11, *Ritchie Captial Mgmt., L.L.C v. Jeffries*, No. 09 CV 07228, 2009 WL 4074122 (N.D. Ill. Nov. 18, 2009), ECF No. 1. This assertion was made to demonstrate venue was proper in the Northern District of Illinois. We are unconvinced judicial notice of this filing resolves the issue. After all, venue may be proper in multiple districts, particularly when there are multiple plaintiffs. *See Setco Ents. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (recognizing the venue analysis does not focus on the "best" venue but whether or not the chosen district had a substantial connection to the claim). Therefore, the fact the Ritchie entities collectively alleged they suffered injury in Illinois does not *necessarily* mean the primary economic impact suffered by the Cayman entities occurred in Illinois.

### 4. Illinois's Statute of Limitations

Having concluded the dismissal of the Cayman entities' claims was erroneous, we must now consider the next step of the district court's analysis for the remaining plaintiffs; Ritchie Capital Management, L.L.C., and Yorkville Investment I, L.L.C. This requires us to review whether the district court correctly concluded that Illinois's five-year limitations period expired before the Ritchie entities filed their lawsuit.

The Ritchie entities commenced the underlying lawsuit against most of the defendants on January 30, 2014. This means that in order for their claims to be timely, they must have accrued no earlier than January 30, 2009.[5] In Illinois, "[a] cause of action 'accrues' when facts exist that authorize the bringing of a cause of action." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028 (Ill. 2012). "Thus, a tort action accrues when all its elements are present, *i.e.*, duty, breach, and resulting injury or damage." *Id.*

The district court determined the claims accrued when the loans took place, between February and May 2008. And the Ritchie entities do not meaningfully attack this determination. Instead, they argue they are entitled to application of the discovery rule, equitable estoppel, or equitable tolling under Illinois law, which would make their claims timely. We address each in turn, but ultimately conclude that, under Illinois law, these doctrines are not applicable.

---

[5]The Ritchie entities do not challenge the district court's determination that "Illinois's statute of limitations for tort injuries to property is five years," 735 Ill. Comp. Stat. 5/13-205, nor that the causes of action would not have a longer limitations period under New York law.

### a. Discovery Rule

The Illinois discovery rule exists "[t]o ameliorate the potentially harsh results" that may be caused by "[a] mechanical application of the statute of limitations," resulting in the limitations period "expiring before a plaintiff even knows of [its] cause of action." *Khan*, 978 N.E.2d at 1028. The discovery rule works "to postpone the start of the period of limitations until the injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Id.* at 1028–29. Starting at that moment, "the burden is on the injured person to inquire further as to the possible existence of a cause of action." *Id.* at 1029.

"A person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct had occurred." *Janousek v. Katten Muchin Rosenman LLP*, 44 N.E.3d 501, 505 (Ill. App. Ct. 2015). The plaintiff need not know or suspect *who* the wrongdoer actually is or even that a cause of action exists in order to have sufficient information to be put on inquiry. *Id*; *accord Ritchie Capital Mgmt., L.L.C. v. Fredrickson & Byron, P.A.*, No. 1–4–2067, 2015 WL 1445681, at *10 (Ill. App. Ct. Mar. 27, 2015) ("Historically, courts in Illinois have recognized that 'the phrase wrongfully caused does not mean knowledge of a *specific* defendant's negligent conduct or knowledge of the existence of a cause of action.'") (quoting *Castello v. Kalis*, 816 N.E.2d 782, 789 (Ill. App. Ct. 2004) (cleaned up)).

The district court concluded that by the end of 2008, the Ritchie entities knew or should have known they were injured by wrongful conduct. By that time, the district court reasoned, the Ritchie entities knew the government had arrested Petters, and had indicted him, PCI, and PGW. The indictment detailed the Ponzi scheme and sought

-18-

forfeiture of assets traceable to the fraud. We agree with the district court's assessment. Even if the Ritchie entities did not know the various defendants were involved in causing their injury or their exact cause of action by the end of 2008, Illinois law says they were on notice and the burden was on them to inquire about a possible cause of action. *See Janousek*, 44 N.E.3d at 505 *Ritchie Capital Mgmt.*, 2015 WL 1445681, at *10. In other words, if they did not know, we believe they should have known. Therefore, the Illinois discovery doctrine does not prevent the expiration of the Ritchie entities' claims by the end of 2013.

### b. Equitable Estoppel and Equitable Tolling

The Ritchie entities also contend their claims are timely under the doctrines of equitable estoppel[6] and equitable tolling. They argue they were unable to unravel Petters's fraudulent scheme because their lawsuit against Petters — in which they intended to conduct discovery — had been stayed and enjoined. Further, the Ritchie entities complain, JP Morgan fought discovery in other litigation to which it was not a party through 2013, which prevented them from understanding JP Morgan's alleged role in the fraud. With these allegations, the Ritchie entities seek application of equitable estoppel and equitable tolling. We hold neither is appropriate under Illinois law.

To establish equitable estoppel under Illinois law, the Ritchie entities must demonstrate six elements: (1) the defendants concealed or misrepresented material facts; (2) the defendants knew the representations were untrue when they were made;

---

[6]In their reply brief, the Ritchie entities argue this court should apply fraudulent concealment under 735 Ill. Comp. Stat. 5/13-215, which they maintain is similar to equitable estoppel. Because they first mentioned this argument in their reply brief, we do not consider it here. *See United States v. Martinson*, 419 F.3d 749, 753 (8th Cir. 2005).

(3) the Ritchie entities did not know the representations were untrue, both when the defendants made them and when the Ritchie entities acted upon them; (4) the defendants intended or reasonably expected the Ritchie entities to act upon the representations; (5) the Ritchie entities reasonably relied upon the misrepresentations in good faith and to their detriment; and (6) the Ritchie entities were prejudiced by their reliance. *See Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000). "The gist of the doctrine is that 'one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of his conduct.'" *Anderson v. Holy See*, 878 F. Supp. 2d 923, 935 (N.D. Ill. 2012) (quoting *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co.*, 455 N.E.2d 246, 252 (Ill. App. Ct. 1983)).

The only specific allegation against any defendant that would potentially implicate equitable estoppel is made against JP Morgan. According to the Ritchie entities, JP Morgan thwarted their efforts in discovery to obtain information revealing the defendants' purported role in Petters's scheme, by first not responding to a subpoena duces tecum issued in May 2010 in a New York bankruptcy action, and later by getting a protective order against such discovery. We fail to see how this apparently routine discovery fight over documents lulled the Ritchie entities into a false sense of security, causing them to delay bringing their claims. It would be one thing if JP Morgan falsely represented to the Ritchie entities that it had turned over all relevant documents and the Ritchie entities relied on that representation to conclude no cause of action existed against JP Morgan. In such a scenario, all elements of equitable estoppel *may* very well be met. But here, the Ritchie entities have failed to establish that JP Morgan lulled them into delaying their lawsuit by lawfully resisting their efforts to obtain documents through third-party discovery. We therefore agree with the district court that the Ritchie entities have not met their burden of showing the doctrine of equitable estoppel applies here.

-20-

As for the doctrine of equitable tolling, Illinois law provides that the doctrine "may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000). However, "[w]hile equitable tolling is recognized in Illinois, it is rarely applied." *Am. Family Mut. Ins. Co. v. Plunkett*, 14 N.E.3d 676, 681 (Ill. App. Ct. 2014). The Ritchie entities have failed to point us to any Illinois case supporting their contention that the doctrine should apply here. In fact, we are only aware of two cases where Illinois courts have applied the doctrine. *See Williams v. Bd. of Review*, 948 N.E.2d 561, 567–72 (Ill. 2011); *Ralda-Sanden v. Sanden*, 989 N.E.2d 1143, 1148–49 (Ill. App. Ct. 2013). *Williams* is not helpful to the Ritchie entities' argument because the Illinois Supreme Court was applying *federal* law to determine whether a federal statutory bar should be tolled. 948 N.E.2d at 567. The case thus tells us nothing about *Illinois* law. And *Ralda-Sanden* involved factual circumstances dramatically different and more extreme than those alleged by the Ritchie entities. 989 N.E.2d at 1148–49 (holding equitable tolling permitted a woman to bring a complaint to establish the paternity of her father where her mother withheld information that the father was alive due to threats to kill her and her family). We are thus unconvinced that Illinois law permits us to apply this "rarely applied" doctrine here, where similarly exceptional circumstances are lacking.

In sum, we conclude neither equitable estoppel nor equitable tolling apply under Illinois law.

## C. Denial of Opportunity to Amend

The Ritchie entities next argue that even if they failed to state a claim under Rule 12(b)(6), the district court erred by refusing to give them opportunity to amend their complaint. We disagree.

-21-

The Ritchie entities never moved to amend their complaint, but instead simply argued in their response to the motion to dismiss for the *opportunity to amend if* the district court determined the complaint should be dismissed. We faced a similar scenario in *Glickert v. Loop Trolley Transportation Development District*, 792 F.3d 876, 880 (8th Cir. 2015).

In *Glickert*, certain plaintiffs opposed a motion to dismiss and asked the district court for permission to amend should it find insufficiencies in their allegations. We observed prior precedent holding that in order "to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." *Id.* (quoting *Wolgin v. Simon*, 722 F.2d 389, 395 (8th Cir. 1983) and citing *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014)). In light of this precedent, we held in *Glickert* that the district court did not abuse its discretion by failing to grant plaintiffs leave to amend their complaint because the plaintiffs "did not submit a motion to amend or a proposed amendment, nor did they indicate what a proposed amended pleading might have contained." *Id.*

We reach the same conclusion here. The district court did not abuse its discretion by failing to grant the Ritchie entities leave to amend their complaint yet again because the Ritchie entities failed to submit a motion to amend or indicate what a proposed amended pleading would have stated.

### D. Alternative Grounds to Dismiss

Because we are reversing the dismissal of the claims brought by the Cayman entities on statute of limitations grounds, we consider the defendants' arguments on appeal that there exists a variety of alternative reasons to dismiss the claims not ruled upon by the district court. The defendants are correct that this court "*may* affirm the district court's judgment on any basis supported by the record." *Loftness Specialized*

*Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014). But here we believe it is prudent to refrain from such a fact-intensive analysis as it would be beneficial for the district court to decide these issues involving the Cayman entities in the first instance. *See id.*

### E. Personal Jurisdiction Over JP Morgan Europe

This leaves one final issue for our consideration. Recall the district court dismissed the Ritchie entities' claims against JP Morgan Europe because it determined personal jurisdiction over the entity was lacking. The district court reasoned that although it had statutory jurisdiction under New York's long-arm statute, the Ritchie entities failed to show the exercise of jurisdiction would comport with constitutional due process. The Ritchie entities claim this decision was erroneous and ask us to reverse it.

Although we detect no error in the district court's personal jurisdiction analysis, we believe it is necessary to remand the issue based on the district court's own reasoning. When reaching its decision, the district court explained that it typically "would stay dismissing [JP Morgan Europe] to allow the plaintiffs to conduct jurisdictional discovery." However, since the district court believed dismissal of the claims against JP Morgan Europe was necessary because they were time barred, it concluded discovery would be pointless. With the Ritchie Cayman entities' claims revived, the district court's rationale for not allowing jurisdictional discovery is no longer present.[7] Therefore, we reverse the dismissal of the Ritchie Cayman entities' claims against JP Morgan Europe in order for the district court to permit jurisdictional

---

[7]We express no opinion as to whether or not the district court was *required* under the circumstances to offer plaintiffs the opportunity to conduct jurisdictional discovery.

discovery if it deems necessary to determine whether it has personal jurisdiction over JP Morgan Europe.[8]

## III. Conclusion

For the foregoing reasons, we affirm the dismissal of the claims brought by Ritchie Capital Management, L.L.C., and Yorkville Investment I, L.L.C. We reverse the dismissal of the Cayman entities' claims against all defendants, and remand for further proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, concurring.

I agree with the majority's conclusions and join in the opinion in full. However, while I agree that the Ritchie entities waived their argument regarding the district court's use of New York choice-of-law principles by not raising it before the district court, I would not be as equivocal as the majority in reaching this conclusion. One of the fundamental limits to our review is that we may not consider arguments that the parties did not raise before the district court, Eagle Tech. v. Expander Ams., Inc., 783 F.3d 1131, 1138 (8th Cir. 2015), as it deprives the opposing party of the opportunity to present argument on that issue, deprives the district court of its authority to decide issues in the first instance, and leaves us with no record upon which to examine the argument. Although this Court departed from this rule in its recent en banc decision, Calzone v. Summers, 942 F.3d 415, 420-21 (8th Cir. 2019) (en banc), I reiterate my

---

[8]Of course the district court may decide there exists an alternative ground to dismiss JP Morgan Europe without permitting jurisdictional discovery. JP Morgan Europe argues on appeal that the claims against it are time barred under any of the possible states' statutes of limitations since the Ritchie entities did not add JP Morgan Europe as a party until February 2015, and there is no basis to conclude their claims relate back to the original filing date. We offer no opinion as to the merit of this argument.

view stated therein, id. at 435 (Shepherd, J., dissenting), that it is of critical importance that we not allow parties to raise issues or present arguments not developed before the district court. Any practice other than steadfastly holding parties to only those issues and arguments they raised before the district court would undermine both the district court's authority and this Court's role as a court of review. See Solomon v. Petray, 795 F.3d 777, 791 (8th Cir. 2015) ("We are not a court of first instance, and will not consider arguments . . . not presented for consideration to the district court.").

KOBES, Circuit Judge, concurring in part and dissenting in part.

I agree with the substance of the majority's reasoning, but I would affirm the district court on all issues and would not remand. As a result, I concur in all but Parts II.B.3, II.D, and II.E of the opinion, and I respectfully dissent for the reasons below.

The court reverses the district court's finding that the Cayman entities "resided in Illinois and suffered the economic injury there" because they could have "primarily suffer[ed] an injury's economic impact in the Cayman Islands" and the pleadings and other information before the court do not establish that the claims accrued in Illinois. Maj. Op. 15. The majority is correct that Cayman law does not necessarily establish that the Cayman entities resided in Illinois. The defendants, however, also argue that the Cayman entities' Illinois residency is "demonstrated by prior court filings" including allegations that their "home forum" is Illinois. JP Morgan Br. 31–32 (citing *Ritchie Capital Mgmt., LLC v. Jeffries*, No. 09 CV 07228, 2010 WL 768877, at *3 (N.D. Ill. Mar. 4, 2010)). I agree.

In the *Jeffries* complaint, the Cayman entities (and the other Ritchie entities) swore that Jeffries and her "co-conspirators purposely contacted Plaintiffs and transacted business in Illinois, the contract was made in Illinois, Plaintiffs wired the funds loaned to PGW from Illinois, and *Plaintiffs' injury occurred in Illinois*." No. 09 CV 07228, D. Ct. Dkt. 1 at ¶ 11, 2009 WL 4074122 (emphasis added). Just as we hold that the district court properly judicially noticed Ritchie Capital Management L.L.C.'s principal place of business, Maj. Op. 13, I would judicially notice where the

injury occurred. The Cayman entities should be held to their prior, sworn assertion that their injuries occurred in Illinois.

I would also not remand for jurisdictional discovery from JP Morgan Europe. The majority agrees with the district court that it lacked specific personal jurisdiction over JP Morgan Europe because "none of [JP Morgan Europe's] alleged contacts is sufficient to allow the Court to exercise jurisdiction." D. Ct. Dkt. 186 at 13. The court notes that there is "no error in the district court's personal jurisdiction analysis." Maj. Op. 22. This means that all four activities the Ritchie entities allege JP Morgan Europe directed at New York, *e.g.*, entering block agreements that swept money into a London account, are not the kinds of activities that give rise to legally sufficient contacts—no matter the number or frequency of those activities. Yet, the court finds that a remand is *necessary* because the district court stated that it would have permitted jurisdictional discovery had the Second Amended Complaint not been time barred. *Id.* at 22–23.

Even had the Ritchie entities requested jurisdictional discovery—and they did not—I would not remand on that basis here. When claims against a defendant fail Rule 12(b)(2)'s standard, the claims do not *"survive* a motion to dismiss." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (emphasis added). To award jurisdictional discovery, plaintiffs need only plead allegations of jurisdiction that, if true, would suffice to establish jurisdiction over the defendant. *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.,* 560 F. App'x 52, 56 (2d Cir. 2014) (per curiam). Without sufficient allegations, as here, the Ritchie entities can only speculate as to what jurisdictional discovery would likely reveal, and that is not enough. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011). Jurisdictional discovery is not a tool to cure a deficient complaint.

_____